## PEOPLE v MITCHELL

Docket No. 56775. Argued May 7, 1976 (Calendar No. 15).—Decided May 1, 1978.

Garry D. Mitchell was convicted by a jury in Lapeer Circuit Court, James P. Churchill, J., of second-degree murder. The defendant claimed that he had been the victim of an unsolicited assault with a butcher knife by the decedent and had stabbed the decedent in self-defense with the knife during the struggle. Defendant testified on cross-examination that he had never solicited homosexual relations but that he had been propositioned twice in the past. The prosecution, over the defendant's objection, introduced rebuttal testimony concerning the defendant's homosexual activity while he was incarcerated awaiting trial and during an unrelated prison sentence to impeach the defendant's denial that he solicited the assault. The Court of Appeals, Danhof and Van Valkenberg, JJ. (Bronson, P.J., dissenting), affirmed (Docket No. 11987). Defendant appeals. *Held:*

1. The defense was self-defense, not that the defendant was the victim of a homosexual assault. The meritorious issue was whether the defendant honestly believed that he was in danger of being killed or of serious bodily harm and whether he acted properly in resisting the perceived threat. The defendant's only characterization of the decedent's conduct as homosexual was in his first statement to the police, which was introduced into evidence by the people. In the other statements he described the decedent's assault on him as painful and the defense did not claim that the stabbing of the decedent was justified or mitigated because of any sense of outrage at an offensive

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 29 Am Jur 2d, Evidence §§ 250, 269.

40 Am Jur 2d, Homicide §§ 301–309, 328.

Prejudicial effect of prosecutor's reference in argument to homosexual acts or tendencies of accused which are not material to his commission of offense charged. 54 ALR3d 897.

[2, 3] 40 Am Jur 2d, Homicide §§ 536–540.

81 Am Jur 2d, Witnesses §§ 526, 593.

[3] 40 Am Jur 2d, Homicide §§ 298–300.

homosexual advance. Therefore, the rebuttal evidence of homosexual advances and experiences was not admissible as being responsive to the defense.

2. The defendant's negative response to the question, on cross-examination, whether he had made homosexual advances to other persons was not subject to rebuttal. The recently adopted rules of evidence permit the court, in its discretion, to allow "inquiry" into specific instances of the conduct of a witness "concerning his character for truthfulness or untruthfulness"; this is consistent with the common-law rule. The cross-examiner is limited to inquiry of the witness himself and may not prove the contrary by extrinsic evidence. The defendant's sexual propensities or preferences do not bear on his character for truthfulness or untruthfulness. Therefore, the rebuttal testimony was not admissible to impeach the defendant's testimony.

3. No claim is made that the evidence of the defendant's sexual propensities or preferences was admissible under the "similar acts" proviso to the general rule prohibiting the introduction of evidence of a person's character. The defendant did not put his character in issue and, accordingly, rebuttal evidence regarding his character was inadmissible.

4. It is apparent on examination of the record, however, that the prosecutor's purpose was to show affirmatively the defendant's asserted homosexuality and to make him appear as a sexual aggressor and not simply to forestall an unexpressed defense, impeach testimony or rebut an express defense or defendant's evidence or to explain ambiguities in the evidence regarding the decedent's intentions. The prosecution, in a word, seeks an exception to the rules of evidence. It was only through evidence introduced in the case-in-chief, the line of questioning of the defendant on cross-examination, and the prosecution's closing arguments that there was any sexual characterization of the assault at the trial. The Court is not prepared to say that because an unasserted sexual connotation might be inferred the door is open to proof of sexuality or sexual experience. A further and concededly unprecedented exception to the general rule prohibiting the introduction of propensity evidence is not warranted in this case.

Reversed and remanded for a new trial.

44 Mich App 679; 205 NW2d 876 (1973) reversed.

1. HOMICIDE—SECOND-DEGREE MURDER—EVIDENCE—SELF-DEFENSE—PRIOR CRIMINAL ACTS.

Rebuttal evidence of the defendant's prior homosexual advances

and experiences introduced by the people in a trial for murder was not admissible on the ground that it was responsive to a claim of self-defense where the defendant did not claim that his conduct was justified or mitigated by a sense of outrage engendered by an offensive homosexual advance and the only characterization of the victim's conduct as homosexual was introduced by the people.

2. CRIMINAL LAW—WITNESSES—IMPEACHMENT—PRIOR CRIMINAL ACTS.

A defendant's negative response to a question, on cross-examination, whether he had made homosexual advances to other persons is not subject to rebuttal; the people are limited to inquiry into specific instances of conduct concerning the witness's character for truthfulness or untruthfulness, and extrinsic evidence is not admissible to prove the contrary of the witness's response; the defendant's sexual propensities or preferences do not bear on his character for truthfulness or untruthfulness (MRE 608[b]).

3. CRIMINAL LAW—EVIDENCE—CHARACTER.

Rebuttal evidence introduced by the people of a defendant's prior homosexual advances and experiences is subject to the general prohibition on the introduction of character evidence where no claim is made that the evidence is admissible under the "similar acts" proviso to the general rule and the defendant did not put his character in issue (MRE 404).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward B. Meth,* Prosecuting Attorney, and *Thomas C. Nelson,* Assistant Attorney General, for the people.

State Appellate Defender (by *Kenneth D. Lerner)* for defendant.

LEVIN, J. Garry Mitchell was convicted of second-degree murder.

Evidence was admitted over objection that, while awaiting trial in this case, Mitchell made sexual advances to a cellmate and related to him prior homosexual experiences in prison.

The people contend that the evidence was admissible

i) to rebut the defense that Mitchell was himself the victim of a homosexual assault by the person who was killed;

ii) to impeach Mitchell's testimony that he had not made homosexual advances to other persons; and

iii) to show Mitchell's propensities and character as a homosexual.

The Court of Appeals, in affirming Mitchell's conviction, stated that by his defense Mitchell had put in issue his character as a homosexual. 44 Mich App 679; 205 NW2d 876 (1973).

We reverse and remand for a new trial.

I

Mitchell, in his early twenties, met Donald Guthrie, in his sixties, in a bar on the evening of November 8, 1970. Mitchell testified that he asked Guthrie for a ride to Lapeer and that Guthrie instead invited him to spend the night at his trailer home. Soon after arriving at the trailer, Mitchell went to sleep in the second bedroom. When he awoke the next morning he found Guthrie sitting at a table drinking whiskey and was invited to join him. After a quantity of beer and whiskey had been consumed, Mitchell became ill and laid down in the master bedroom. He was awakened by Guthrie pulling at his pants; he knocked Guthrie's hand away and asked him what he was doing. Guthrie then grabbed Mitchell's testicles and squeezed. Mitchell hit Guthrie about the head five or six times. Guthrie stepped away, reached behind his back, produced a knife and wielded it in Mitchell's direction. Mitchell wrestled the knife away and stabbed Guthrie.

Mitchell fled in Guthrie's car. Two days later, on

November 11, he wrote his parole officer describing the incident. A few days later, after his arrest, Mitchell made a formal statement to the police and, subsequently a second statement. The letter and the two statements were introduced as part of the prosecution's case-in-chief. Mitchell's trial testimony, the letter and statements relate essentially the same account of the events of November 8th and 9th.

In the letter to the parole officer there was no specific reference to homosexuality; Mitchell said: "I began to get up and he grabbed my penis, and it hurt, so I hit him about five or six times and yelled for him to get the hell away from me."

In the first statement, on the day of his arrest, in response to a question Mitchell said that he thought Guthrie's intentions were sexual, but did not claim that his conduct was justified or mitigated by the sexual nature of the assault:

"When you were woke up by Guthrie pulling on your pants, what did you think he was trying to do?

"I didn't know what to think.

"Didn't you tell one of the officers earlier that you thought he was trying to give you a blow job, as you stated it to them?

"I think that was his intention.

"Did Guthrie threaten you in any way before he pulled the knife?

"No, just grabbed me by my balls.

"Did he give any sign to you that he might have been a homosexual?

"No, none.

"When you took the knife away from Guthrie, what were you thinking about?

"Just stopping him."

In the second statement, six days later, the following appears:

"Have you ever had guys make passes at you before?

"Yes.

"Where?

"In 1966 in an armed robbery charge.

"Have you ever made passes towards guys?

"No, just once in prison."

Mitchell testified on direct examination that he responded to the last question "No", and did not add "just once in prison"; in neither incident did he make any sexual advances and both times he had been propositioned.[1]

---

[1] The relevant portion of the defendant's direct testimony follows:

"*Q.* And then, do you remember making a statement to Officer Fahey, the officer sitting right here?

"*A.* Yes, I do.

"*Q.* All right. Now if I read you some of those questions, would they refresh your memory? There is a question Mr. Fahey asked you: 'Have you ever had guys make passes at you before?' Do you recall that question being asked?

"*A.* Yes, I do.

"*Q.* Do you recall making the answer: 'Yes.'?

"*A.* I do.

"*Q.* All right. Do you remember him asking you a question: 'Where?' Do you remember him asking that question?

"*A.* Yes, I do.

"*Q.* Do you remember you answering: 'In 1966, in an armed robbery charge.'

"*A.* Yes.

"*Q.* Is that answer correct?

"*A.* No, it is not, sir.

"*Q.* Now, what and how is it incorrect?

"*A.* I was never charged with armed robbery.

"*Q.* All right. There was another question here: 'Have you ever made passes toward guys?' Do you remember that question being asked of you?

"*A.* Yes, I do.

"*Q.* Do you remember your making an answer: 'No, just once in prison.'?

"*A.* I remember making the answer 'No.'

"*Q.* Is this answer incorrect, then: 'No, just once in prison'?

"*A.* Yes, sir, it is incorrect.

"*Q.* And how is it incorrect?

"*A.* While I was there, a young fellow approached me. He'd been there, and I'd known of him, and he told me that he would like to have a homosexual relationship with me."

Mitchell was cross-examined concerning those incidents and was asked whether he had ever made a homosexual advance, pass or attack or consented to any homosexual act while incarcerated; he responded in the negative.[2]

A person who occupied Mitchell's cell while he was awaiting trial in the instant case testified on rebuttal, over objection, that Mitchell told him "how many homosexual activities he participated in with other prisoners", described those activities, "said he screwed a lot of guys down there in prison", that Mitchell "patted me on the butt many times", and that "[h]e was constantly propositioning me with some kind of homosexual activity".

On surrebuttal, another cellmate gave testimony

---

[2] "Q. Have you ever made any homosexual advances towards any other men?

"A. No, I have not.

\* \* \*

"Isn't it true you made a homosexual attack upon Buster Brown?

"A. No, that is not true.

\* \* \*

"Q. \* \* \* [Y]ou stated that a young man came up to you once when you were in prison and asked you to be a participant in a homosexual relationship?

"A. Yes, he did.

"Q. What did you say to him?

"A. It was never carried out, no.

"Q. You never consented?

"A. No.

"Q. Did you ever make a pass at anybody in jail?

"A. No, I did not.

"Q. Did you ever consent to any homosexual act in jail?

"A. No, I have not.

"Q. And the question that Trooper Fahey directed to you on the last page of that statement, on page seven: 'Have you ever made passes toward guys?' 'Answer: No, just once in prison;' now, could you explain that answer again for us, please?

"A. He asked me the question, if I had ever made a pass at anyone in prison, and I stated, 'No.' And then, I told him of this other event, and how he typed it, I mean—."

tending to negative the rebuttal testimony. Mitchell's motion for a continuance to have still another cellmate produced was denied.

In closing the prosecutor argued the evidence of Mitchell's "homosexual tendencies".[3] Mitchell's lawyer, responding briefly to that argument, said that homosexuality was not "the issue".[4]

## II

The defense was self-defense, not that Mitchell was the victim of a homosexual attack.

Mitchell did not—in the letter, the statements or in his trial testimony—claim that he responded as he did, following Guthrie's alleged assault, because he had been subjected to a homosexual advance or attack.

Mitchell claimed self-defense. The meritorious issue was whether Mitchell honestly believed that he was in danger of being killed or of serious bodily harm and whether he acted properly in resisting the perceived threat.

---

[3] At trial the prosecutor argued to the jury:

"I think one of the critical things you're going to have to decide, and it's obvious, is who assaulted who here? Who is the homosexual? We've had Mrs. Guthrie and Lynn Peck testify, and the bar owner; some people who have known him rather intimately for a long period of time. They didn't have any reason to believe this. What reason, if any, do we have to believe that Mr. Mitchell had homosexual tendencies?"

In his brief on appeal he stated:

"The issue was not who made the homosexual attack, but whether such event occurred at all."

[4] Defense counsel during closing argument to the jury stated:

"Now, there's been much made, on the part of the prosecution, of homosexuality. I don't think the defendant, outside of any statement, questioning by the state troopers, said that the man at least tugged on his trousers. Mrs. Guthrie testified that she didn't know him as a homosexual. And I think that probably would be the case. As I understand homosexuals, if they have this type of desire, that quite often, there are people very close to them that never know about this type of thing; but I'm not sure that's even an issue in this case. There's been a lot made of it, but I don't think it's the issue."

Mitchell's only characterization of Guthrie's conduct as homosexual was in the first statement to the police, *introduced by the people.* In the letter and at the trial Mitchell described the grabbing as painful. He did not claim that the stabbing of Guthrie was justified or mitigated because he was affronted, repulsed or outraged by sexual overtones.

Mitchell's lawyer, in argument during trial outside the presence of the jury, said that he did not regard homosexuality as an issue. In closing argument, following argument to the contrary by the prosecutor, he said that it was not the issue.

Since Mitchell did not claim that his conduct was justified or mitigated by a sense of outrage engendered by an offensive homosexual advance, the rebuttal evidence of homosexual advances and experiences was not admissible on the ground that it was responsive to Mitchell's defense.

## III

Mitchell did not assert on direct examination that he had never made homosexual advances.

On direct examination he denied making the response attributed to him in the second statement to the police.[5]

A proper rebuttal of Mitchell's denial would have been the testimony of someone who was present when he made the second statement to the police.

Evidence that the statement, if made, might[6]

---

[5] In explaining the "incorrectness" of the statement read into the record he said that he was approached by a young fellow in prison. The rebuttal testimony did not contradict or impeach the truth of that explanation.

[6] The rebuttal testimony did not show that the statement was true, only that it *might* have been true.

have been true was not admissible to show that the statement was made.

Mitchell's negative response to the question, on cross-examination, whether he had made homosexual advances to other persons was not subject to rebuttal. Recently adopted MRE 608(b) permits the court, in its discretion, to allow "inquiry" into specific instances of the conduct of a witness "concerning his character for truthfulness or untruthfulness".[7] This is consistent with the common-law rule.[8]

The people were limited to "inquiry" of Mitchell himself. Extrinsic evidence was not admissible. Mitchell's sexual propensities or preferences do not bear on his character for truthfulness or untruthfulness.

---

[7] "Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in MRE 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

"The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility." MRE 608(b).

[8] See, generally, McCormick, Evidence (2d ed), § 42, pp 82–84; 3 Weinstein, Evidence, ¶ 608[05], pp 608-21—608-30.

In *People v Westek*, 31 Cai 2d 469, 475; 190 P2d 9, 13 (1948), relied on by the Court of Appeals, the defendant on direct examination testified "that he had never 'at any time' committed any act of sodomy, or any lewdness, in the county of trial or in 'any other county' upon any boy". On cross-examination, he denied having committed such acts "upon three specifically named boys, persons other than the prosecuting witnesses". On rebuttal, the prosecution was permitted to call the three boys who impeached defendant's testimony. In *Westek*, in contrast with this case, there was a sweeping denial by the defendant of ever having committed an act of sodomy or lewdness with any boy at any time. The denial concerned the very offense charged. It was adduced on direct examination by the defendant's counsel. Here the denial was not sweeping, it was on cross-examination and did not relate to the offense charged.

We conclude that the rebuttal testimony was not admissible to impeach Mitchell's testimony on cross-examination that he had not made homosexual advances to other persons.

## IV

Evidence of Mitchell's propensities or character as a homosexual was not admissible.

Recently adopted MRE 404, which is also consistent with the common-law rule,[9] provides, with exceptions not here pertinent, that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion" but that evidence of "other crimes, wrongs, or acts" may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material".

No claim is made that the evidence of Mitchell's sexual preferences or propensities was admissible under the "similar acts" proviso to the general rule prohibiting evidence of a person's character. The proffered evidence is accordingly subject to the general prohibition of character evidence and to the specific rule which permits evidence of a pertinent trait of character of an accused only when offered by him or by the prosecution to rebut character evidence offered by him.[10]

---

[9] *See, generally,* McCormick, *supra,* §§ 188, 190, pp 444–445, 447; 2 Weinstein, *supra,* ¶ 404[04], pp 404-23—404-29.

[10] *Id.*

"Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

"(1) *Character of an accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same." MRE 404(a)(1).

Mitchell did not, contrary to the Court of Appeals analysis, put in issue his character and, accordingly, rebuttal evidence regarding his character was inadmissible.

## V

The people argue that Mitchell "portrayed" himself as a heterosexual and if the judge had not admitted the evidence of Mitchell's homosexual propensities the jury would have been left with a false impression that he had no such tendencies and on that account might have acquitted him. The argument elides that it was the prosecution which introduced the subject matter and brought about whatever "portrayal" resulted from Mitchell's response, and that Mitchell did not claim that his conduct was justified or mitigated by the sexual connotations of Guthrie's assault.

A thread connecting all the arguments for admissibility is the claim that the people were responding to defense evidence—rebutting a defense of homosexual assault, impeaching Mitchell's testimony, rebutting character evidence—rather than affirmatively. It is apparent on examination of the record, however, that the prosecutor's purpose was to show affirmatively Mitchell's asserted homosexuality and to make him out as a sexual aggressor and not simply to forestall an unexpressed defense, impeach testimony or rebut an express defense or defendant's evidence or to explain ambiguities in the evidence regarding Guthrie's intentions.

The people acknowledge that the cross-examination and rebuttal evidence "does not readily comport with any of the standard categories usually denominated under the general rubric of

'impeachment' ". They contend that "the general rules related to introduction of character evidence do not provide the proper framework for analysis of the rebuttal testimony in this case", and that the rebuttal evidence should not be deemed inadmissible because it "cannot be pigeonholed into one of the traditional categories of impeachment", and that the "instant case presents an unusual situation which necessitates a balance of a variety of factors". In a word, the people seek an exception to the rules of evidence.

Evidence of specific sexual acts may be admissible, when material, as "similar acts" where they tend to prove motive, intent or the like. Where not so admissible, a further exception to the general rule prohibiting proof of propensities or traits of character *may* be justified—in exercise of the judicial power to decide on the rules of evidence[11]—in order to avoid misleading the jury where there is probative evidence that the person's sexual preferences or tendencies are atypical, having in mind the person's age, marital history and general appearance.

If a defendant were to claim, for example, that homosexual overtures were shocking and offensive and that the reasonableness of subsequent conduct should be assessed with that in mind, evidence of comparable homosexual experience[12] might tend to refute the claimed "sense of outrage". In this case, however, Mitchell made no such claim.

To be sure the jury might have inferred, al-

[11] *See Perin v Peuler (On Rehearing)*, 373 Mich 531; 130 NW2d 4 (1964).

[12] The rebuttal testimony was of peripheral probative value as it tended to show only that Mitchell had homosexual experiences while incarcerated and not that he had participated in homosexual acts in the free world. Also, while the prosecutor argued that Mitchell was the homosexual aggressor, he offered no evidence that Mitchell had ever committed a homosexual assault.

though Mitchell made no such defense, that he had been subject to a homosexual advance and might also have inferred that he was a heterosexual and additionally inferred "a sense of outrage". It was, however, the prosecutor who introduced the statements which contained the homosexual characterization of the attack and the references to homosexual advances in prison. But for the introduction of the statements, Mitchell would have had no occasion to deny having made a response attributed to him in one of the two statements or to explain what he did say.[13] But for the prosecutor's cross-examination of Mitchell, there would have been no other reference to the subject matter. Without the evidence introduced by the prosecutor in his case-in-chief, his line of questioning on cross-examination and his closing arguments, there would have been no sexual characterization of the assault at the trial.

We are not prepared to say that because an unasserted sexual connotation might be inferred, the door is open to proof of sexuality or sexual experience.[14]

We conclude that a further and concededly unprecedented exception to the general rule prohibiting propensity evidence was not warranted in this case.

---

[13] It is frequently necessary to *Bruton*-ize confessional statements *(Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 [1968]). There was no need to introduce the statements in their entirety.

[14] The expressed concern of avoiding misleading the jury could have been met by calling upon Mitchell, outside the presence of the jury, for a formal declaration eschewing a defense of "outrage" and for consent to jury instructions that, for example, "the defendant does not claim that he acted as he did because he was offended by homosexual overtures, and in assessing his conduct you should not count as a factor the possibility that he was offended and reacted out of a sense of outrage and moral indignation as well as because of the asserted threat to life and limb".

Reversed and remanded for a new trial.

KAVANAGH, C.J., and WILLIAMS, FITZGERALD, and RYAN, JJ., concurred LEVIN, J.

COLEMAN, J. I concur excepting as to footnotes 12 and 14.

BLAIR MOODY, JR., J., took no part in the decision of this case.