PEOPLE v HERNANDEZ

Docket Nos. 72645, 72646. Decided November 13, 1985. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave to appeal, reversed the judgments of the Court of Appeals and the circuit court and remanded the case to the circuit court for a new trial.

Daniel Hernandez was convicted by a jury in the Isabella Circuit Court of two counts of second-degree criminal sexual conduct involving a girl under the age of thirteen. During trial, the court, Paul F. O'Connell, J., granted the defendant's motion in limine to exclude evidence of a prior bad act, but subsequently allowed cross-examination of the defendant regarding the act on the ground that the defendant's denial of the act on direct examination introduced the subject to the jury. The defendant was sentenced to two concurrent three- to fifteen-year prison terms. The Court of Appeals, DANHOF, C.J., and V. J. BRENNAN and BAGULEY, JJ., affirmed in an unpublished opinion per curiam (Docket No. 61265). The defendant applies for leave to appeal.

In an opinion per curiam, signed by Chief Justice WILLIAMS, and Justices LEVIN, RYAN, BRICKLEY, CAVANAGH, and RILEY, the Supreme Court held:

The defendant's testimony on direct examination did not introduce the subject of the prior bad act. Evidence of the act should not have been introduced on cross-examination of the defendant and through rebuttal testimony.

The defense, having moved in limine to exclude evidence of the prior bad act and having received a favorable ruling, was entitled to rely on the court's determination. The cross-examination of the defendant by the prosecutor compromised the trial court's ruling. Introduction of the rebuttal testimony on a collateral issue not material to the resolution of the case was error, its prejudicial effect far outweighing its probative value.

Reversed.

Justice BOYLE, concurring in part and dissenting in part, agreed that the rebuttal testimony of a witness was improper and that reversal is required, but stated that the prosecutor's questioning of the defendant on cross-examination was proper impeachment by contradiction of his testimony on direct exami-

nation. Statements made by a defendant on direct examination should be allowed to be contradicted by extrinsic evidence that directly rebuts the assertions made on direct examination. The admissibility of such extrinsic evidence should lie within the discretion of the trial court, subject to the balancing of relevancy required by court rule. For statements elicited by the prosecution on cross-examination which could have been admitted in the case in chief, the presumption should be against admitting rebuttal evidence unless it is admissible on some other recognized evidentiary basis. In this case, it was not clear that the witness' testimony directly contradicted the defendant's testimony on direct examination. In addition, the witness' testimony was clearly prejudicial, and its admission was error requiring reversal.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Joseph T. Barberi,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people.

State Appellate Defender (by *Terence R. Flanagan*) for the defendant.

PER CURIAM. This defendant persuaded the trial court to exclude evidence that he had committed a prior bad act. The issue now before us is whether the defendant's own direct examination testimony introduced the subject to the jury, thus opening the door for the prosecution to cross-examine the defendant on the prior bad act and introduce rebuttal testimony that the prior bad act did occur. We agree with the defendant that his testimony on direct examination did not introduce the prior bad act and that evidence of the prior bad act should not have been admitted at trial. We therefore reverse the defendant's conviction and remand the case to the circuit court for a new trial.

I

In separate informations, the defendant was

charged with having engaged in sexual contact
with C.C., a person under the age of thirteen, on
July 1, 1979, and on July 14, 1979. MCL
750.520c(1)(a); MSA 28.788(3)(1)(a). More than a
year before the trial, the defendant filed a written
motion in limine requesting the trial court to
exclude evidence that, in August of 1979, he had
kissed a young girl named K.P. on the mouth. Not
long after, the trial court issued a written order
reserving its ruling on this matter until the trial.

The case was tried in late July of 1981. When
the defendant's motion in limine was again consid-
ered, the trial court held that the evidence con-
cerning K.P. should be excluded:

> But the court has great reluctance, and, in fact,
> will not allow the testimony of [K.P.] for the
> reason the court cannot see the similarity between
> kissing which may've been a totally innocent act
> and the other acts of which the defendant is
> accused which are obviously of a sexual nature. I
> assume kissing in some instances does lead to
> other acts of intimacy, sometimes it doesn't. Some-
> times it's done for purely affectionate reasons. But
> I do not see the similarity between the two, and I
> believe that if the court were to allow it that the
> prejudicial effect would in this particular case far
> outweigh, far, far outweigh any probative value it
> would have. So, therefore, the court will rule, and
> does rule, that the prosecutor may not ask this
> witness any questions relating to a specific occur-
> rence or occurrences which may've occurred, and
> which were contained in the prosecutor's offer of
> proof.

In due course, the defendant took the stand and
denied any impropriety with C.C. The prosecutor
seized on the final question and answer of the
defendant's direct examination as an invitation to
inquire whether the defendant had ever kissed
K.P.:

*Q.* Mr. Hernandez, did you ever touch this child, [C.C.]?

*A.* No, I haven't.

*Q.* Did you ever touch her in a sexual manner as she testified?

*A.* I never touched that child.

*Q.* Did you ever touch any child in the manner she testified?

*A.* I never touched any child.

[*Defense Counsel*]: I don't have any further questions. Thank you.

[*Assistant Prosecutor*]: Could I have the last question and answer read back, your honor?

*The Court:* Yes.

*Cross Examination by* [*Assistant Prosecutor*]:

*Q.* Mr. Hernandez, your testimony is you have never touched any child in a sexual manner?

*A.* Never touched any child.

*Q.* Have you ever kissed a little girl?

*A.* I've kissed a lot of children.

*Q.* Have you ever kissed [K.P.]?

*A.* Not to my knowledge, no, I have never.

*Q.* Did you ever take [K.P.] into your cabin one time when you were looking for something and kiss her and put your arm around her, and then tell [K.P.] don't tell your parents, let's let this be our little secret?

*A.* No sir.

*Q.* You never did that?

*A.* No sir.

*Q.* Do you know who [K.P.] is? You saw her?

*A.* Yes, I know who she is.

*Q.* And you're swearing under oath you never ever kissed [K.P.] in her life?

*A.* No, I have not.

*Q.* And you're swearing under oath that you never told [K.P.] don't tell anybody about this, let's keep this our little secret?

*A.* I never have.

The defendant did not object at the time those

questions were asked,[1] but once the jury was absent, he strenuously objected to what had happened, as well as to the prosecution's plan to call K.P. as a rebuttal witness. The defendant observed that K.P.'s name was never mentioned during the direct examination. Moreover, argued the defendant, the final question and answer of his direct examination had concerned his *sexual* touching. Unpersuaded, the trial court ruled that it would allow the prosecution to employ K.P. as a rebuttal witness:

> The court finds that one of the, if not the leading, one of the leading cases involving the matter of rebuttal testimony is found in the case of *People v Bennett*, 393 Mich 445 [224 NW2d 840 (1975)]. At 449 and 450 the court stated that rebuttal is limited to the refutation of relevant and material evidence, hence evidence bearing on an issue properly raised in the case. Such issue, of course, could

[1] A short time later, defense counsel explained the lack of objection:
"Your honor, may I only say that the reason the matter was not objected to was so as not to draw the attention of the jury to what was going on at that point. As soon as that question was asked, did you ever kiss [K.P.], all jurors—all twelve jurors' eyes opened up to double their normal size. I couldn't have objected to that and had a discussion in front of the court. They would have at least been left with the impression that there was something that the defense was trying to hide from this jury. The prosecutor knowing of the court's previous ruling had the defense in a position with my hands tied behind my back. I was damned if I objected, and I'm now being damned if I didn't object. There was little to do at that point once the question had come out. There was no way this court could have ever instructed that jury to disregard any question as to whether the defendant ever kissed [K.P.]. I just—the decision was made at that point not to object to it, not to draw attention to the matter. Now here we are in a position because I didn't do that, the court is saying, well, because you didn't object, and the prosecutor clearly elicited that testimony as to [K.P.]. The man elicited a denial. He knew what he was doing. He knew exactly what he was doing. He had the little girl sitting in the hallway so the defendant could deny that, and so he could trot her in here and get in front of this jury what the court previously ruled they cannot do because of the prejudicial effect. Now it's coming in anyway because he's elicited a denial. The name of [K.P.] was never mentioned by the defense when it was examining Mr. Hernandez."

be one raised in the prosecutor's case in chief, or one raised by way of defense, and evidence on either would be subject to rebuttal. But here where the prosecutor did not offer this evidence in his case in chief, which he would've had to do if this were to be regarded as an admission, it did not bear on an issue raised by the People; neither does it bear on an issue raised by the defense. In *People v Grigsby [On Remand],* 99 Mich App 672, 675 [299 NW2d 21 (1980)], it is clear that rebuttal testimony is limited to the refutation of relevant and material evidence, hence evidence bearing on an issue properly raised in a case. It is also clear that a prosecutor may not elicit a denial of some statement not properly in the case and subsequently inject the issue into the case through rebuttal. They cite *[People v] McGillen #1* [392 Mich 251; 220 NW2d 677 (1974)], they cite *Bennett* and others. This general subject matter was reviewed, I thought, rather thoroughly, and the court took the position that the alleged activity between the defendant and the young child, [K.P.], was not to be injected into the case by the People. In this situation we have a situation where not only has the defendant denied ever touching in any way the alleged victim in this case, [C.], but has also testified in response to a question asked by his attorney that he never touched any other little girl as well. Further on cross examination he has denied having ever kissed [K.P.] and also denied having told her not to tell anyone of the particular instant [*sic*]. The prosecution attempted to offer this evidence in its case in chief, and was rejected by the court. However, in this instance we have a question that was raised by the defense counsel and answered by his client. The subject matter was then gone into on cross examination without objection, and the court believes that this is a—that the subject matter is proper for rebuttal as long as it's limited to the refutation of relevant and material evidence, and it was evidence which bears on an issue that was raised by the defense. Therefore, I will allow the rebuttal testimony of this young child.

In his direct examination of K.P., the assistant prosecutor elicited the following testimony:

*Q.* Okay. And did Danny go into the closet with you?
*A.* Yes.
*Q.* What happened, if anything, in the closet?
*A.* He said that he was going to teach me how to kiss.
*Q.* Okay. And what happened next?
*A.* He kissed me.
*Q.* Okay. And where were his hands when he kissed you?
*A.* Just on my back.
*Q.* Okay. How old were you then?
*A.* Eleven.
*Q.* Okay. What did Danny say to you, if he said anything, after he kissed you?
*A.* He said don't tell anyone, it's just our little secret.

K.P.'s testimony was emphasized at several points in the assistant prosecutor's argument to the jury:

One of the questions I thought about was why didn't [C.] tell her mother about this earlier? I think you got that answer by [K.]. The same reason that [K.] didn't tell her folks, her brother or anybody about this, as defense counsel so kindly brought out, is because that man told these little girls not to tell people what he was doing to them. He denied it. Well, I didn't touch—I didn't touch any of those girls. I never did anything like this, he says. Then [K.] gets on the stand under oath and recounts an incident to you where not only did he teach her how to kiss, apparently he decided to teach [C.] how to do a little bit more than kiss. He wanted it to be our little secret. Let's not tell anybody. That shows you what the defendant was doing. It was up at the cottage, the same

summer of '79, and she's an attractive little eleven year old girl. He says, hey, here's my chance. I'll kiss her in the closet. I'll teach her how to kiss and see what's going to happen next. Boy, I don't want anybody to know about this because I know I shouldn't be doing this kind of thing. I shouldn't be going after little eleven year old girls. I'm a forty year old man. I shouldn't be doing this kind of stuff. So, little girl, let's just keep this our little secret. Do you think [K.] was lying to you? Is she part of this vast conspiracy to convict this defendant? I don't think the evidence shows that. It shows a plan or scheme.

\* \* \*

Why would [C.] and her family lie? There has been no reason whatsoever from that witness stand; no reason whatsoever that [C.] and her family would lie about what happened. There's no reason [K.] would lie about what happened. The judge will tell you that you can only listen to evidence from the witness stand. Finally look at what the defendant's little scheme, little plan was. He's up north, and his girlfriend is not around. There's a couple of cute little girls running around. He doesn't just do this with [C.], although he goes farther with her. He tries the same type of thing with [K.]. Not only that, he gets on the witness stand and says, no, that never happened. He swore to you under oath, ladies and gentlemen. Make no mistake about it. He sat right there and he swore to you under oath that he never kissed [K.] that summer, and that he never told her not to tell anybody. Do you know why he swore that? Because, boy, he sure doesn't want you folks to believe that he was trying this with another little girl. But that other little girl was here, ladies and gentlemen, and she got up and said, yes, he did. I don't think she's very happy about being here. She told you she was nervous. You could see she was nervous. Was she lying? Again, why would she lie? Does the defendant have a reason to lie about it? You bet, he doesn't want to be convicted. Did she have a reason to lie about it? No. All she has to do

is say, no, he never kissed me. He never touched
me. That's not what she said, ladies and gentle-
men. Again, she told you the truth.

After the jury returned a verdict of guilty as
charged, the defendant was sentenced to concur-
rent terms of from three to fifteen years in prison.
The Court of Appeals affirmed the convictions,[2]
rejecting the defendant's claim that there was
error in the trial court's handling of the testimony
of K.P.:

> The prosecutor sought to use similar acts evi-
> dence against the defendant. The evidence con-
> sisted of the testimony of 11-year-old [K.P.], that
> defendant had kissed her and told her not to tell
> anyone. The trial judge ruled that the evidence
> was inadmissible. Defendant testified at trial that
> he had never touched any girl in the way claimed
> by the alleged victim. On cross-examination, defen-
> dant denied every [sic] having kissed [K.P.]. The
> prosecutor was then allowed to present the con-
> trary testimony of [K.P.].
>
> Defendant argues that the admission of [Ms.
> K.P.]'s testimony denied him a fair trial. We dis-
> agree with this claim, because we disagree with
> the defendant's contention that the cross-examina-
> tion of defendant concerning [K.P.] was improper.
> Defendant "opened the door" to testimony con-
> cerning sexual contact with young girls by denying
> that he had ever engaged in such contact. By
> doing so, he placed his character in issue. The
> prosecutor was free to present extrinsic evidence
> of defendant's propensity to engage in such con-
> duct. This case is not similar to *People v Mitchell,*
> 402 Mich 506; 265 NW2d 163 (1978). In that case,
> the prosecution introduced evidence suggesting
> homosexual activity on the defendant's part. De-
> fendant denied having engaged in such activity

[2] Unpublished opinion per curiam of the Court of Appeals, decided
July 22, 1983 (Docket No. 61265).

and the prosecutor was allowed to present extrinsic evidence refuting the denial. In the present case, the defendant clearly opened the door by his broad denial of sexual activity with children. The testimony of [K.P.] was admissible to refute this claim. See *People v Edmonds,* 93 Mich App 129, 134-135; 285 NW2d 802 (1979). This testimony was not improperly used in rebuttal; it was clearly not admissible in the People's case-in-chief.

The defendant has now filed in this Court a delayed application for leave to appeal.

## II

We need not tarry at our determination that the trial court was correct in its original decision to exclude the evidence concerning K.P. This evidence wholly fails to satisfy the applicable standards for the admission of such evidence. *People v Major,* 407 Mich 394, 398-399; 285 NW2d 660 (1979); *People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982).

Rather, the issue is whether the otherwise inadmissible evidence became a fit subject for cross-examination and rebuttal as a result of the defendant's denials. In *People v McGillen #1,* 392 Mich 251, 264-268; 220 NW2d 677 (1974), a rape defendant testified that he had never spanked any of his children (including the victim) and that he had never struck the victim with his hand. Having already decided to reverse the defendant's conviction because of an unrelated error, this Court explained its view of the rebuttal testimony that the prosecution had introduced to contradict the defendant's denials:

It would be relevant to contradict the testimony of the defendant as to whether or not he ever

struck the prosecutrix and, by so showing, introduce evidence tending to show the state of mind of the prosecutrix at the time of this alleged incident. Any fear which Barbara had of her father would be relevant on the question of the amount of resistance she could be expected to put forth to her father's advances. It might also be relevant to show that defendant has struck other members of the family, but only so far as that act was committed in Barbara's presence, or was in some way communicated to her and had some effect on her mental attitude towards resisting her father's will.

Without this vital connective link, this rebuttal testimony becomes collateral to the issue being tried and inadmissible.

Also, where the nature of the rebuttal testimony itself, as presented in this case, is so inherently inflammatory and prejudicial, the trial judge, when the proper objections are raised, should consider whether or not any probative value it may have is outweighed by the inherent prejudice to the defendant and if so, exclude it from testimony. This is particularly so where, as in this case, the prosecutor proceeds to question the witness on all the emotionally appealing, prejudicial details of the father's "spanking." These details, it is noted, go beyond simple contradiction of the defendant's testimony in this case. Generally, the only type of contradictory evidence that is admissible is that which directly tends to disprove the exact testimony given by a witness. [392 Mich 267-268.]

We explained a bit more about rebuttal in *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975). In *Bennett,* the defendant was on trial for first-degree murder. After the prosecution had introduced its case in chief, the defendant produced alibi witnesses and took the stand himself to deny the shooting. On cross-examination, the defendant was asked whether he had ever told a fellow jail inmate that there were going to be more murders after he was released from the jail. The defendant

responded, "No." The trial court then permitted the prosecution to rebut the defendant's denial through the testimony of a witness who said, "I heard him saying that he had another fellow to kill when he get out." We explained that this was improper rebuttal and cautioned that rebuttal is limited to refutation of relevant and material evidence. The prosecution had argued that this was proper rebuttal testimony since it contradicted defendant's denial. We were unpersuaded:

> This argument misconceives the office of rebuttal. Rebuttal is limited to the refutation of relevant and material evidence—hence evidence bearing on an issue properly raised in a case.
>
> Such issue of course could be one raised in the prosecutor's case in chief or one raised by way of defense, and evidence on either would be subject to rebuttal.
>
> But here, where the prosecutor did not offer this evidence in his case in chief, which he would have had to do if this were to be regarded as an admission or part of a scheme, it did not bear on an issue raised by the people.
>
> Neither does it bear on an issue raised by the defense.
>
> The device of eliciting a denial of some statement not properly in the case at the time of denial will not serve to inject an issue.
>
> Both the statement and the veracity of the witness are then collateral matters and the cross-examiner is bound by the response. *People v Hillhouse,* 80 Mich 580; 45 NW 484 (1890). [*Bennett,* 393 Mich 449-450.]

Similarly, in *People v Losey,* 413 Mich 346; 320 NW2d 49 (1982), we reversed a conviction after the prosecution introduced rebuttal testimony to contradict the defendant's denial of a matter that was introduced during cross-examination of the defen-

dant and that was of doubtful relevance. The prosecutor conceded that the rebuttal was error, and we noted again the *Bennett* rule that the device of eliciting a denial on cross-examination may not be used to inject a new issue into the case. We also repeated a statement we had made in *People v Teague,* 411 Mich 562, 566; 309 NW2d 530 (1981), that extrinsic evidence cannot be introduced to impeach a witness on a collateral matter.

### III

The defense, having moved in limine to exclude testimony concerning K.P. and having obtained a favorable ruling, was entitled to rely upon that determination.[3] The prosecutor's cross-examination of the defendant concerning K.P. compromised the prior ruling of the trial court in this regard. The final question and answer of the defendant's direct examination had nothing to do with kissing and instead concerned whether the defendant had ever touched any child in a sexual manner.

For the same reasons, the introduction of the rebuttal testimony was error. Moreover, it contradicted several principles that were explained in the above-cited cases. It was rebuttal on a collateral issue, *i.e.,* rebuttal on an issue not material to the resolution of the case. Moreover, its prejudicial effect surely outweighed any probative value. MRE 403. Finally, it did not disprove the exact testimony of the defendant, except insofar as it tended to disprove the denial proffered during the improper cross-examination concerning K.P.

This was a closely contested credibility contest in which the defendant denied any wrongdoing.

---

[3] On the facts of this case, defense counsel acted responsibly by waiting until the first opportunity to renew his objection outside the presence of the jury. See n 1.

On the whole record before us, we cannot say that the cross-examination of the defendant and the introduction of rebuttal testimony concerning K.P. was harmless beyond a reasonable doubt.

Therefore, in lieu of granting leave to appeal, we reverse the judgments of the Court of Appeals and the circuit court, and we remand this case to the circuit court for a new trial. MCR 7.302(F)(1). This disposition makes it unnecessary for us to address the defendant's remaining issues.

WILLIAMS, C.J., and LEVIN, RYAN, BRICKLEY, CAVANAGH, and RILEY, JJ., concurred.

BOYLE, J. (*concurring in part and dissenting in part*). I agree that the rebuttal testimony of K.P. was improper and that therefore Hernandez' conviction must be reversed. However, in my view the prosecutor's questioning of Hernandez on cross-examination was proper impeachment by contradiction of Hernandez' testimony on direct examination.

The trial court ruled favorably on the defendant's motion in limine to exclude K.P.'s testimony that Hernandez had kissed her on the mouth. The court found that the prejudicial effect of such testimony outweighed its probative value because kissing an eleven-year-old girl is not as overtly a sexual act as that with which the defendant was accused—manually rubbing the vagina and placing his penis between the legs of a seven-year-old girl. Therefore, the trial judge ruled that the prosecutor could not introduce in his case in chief as a similar act under MRE 404(b) K.P.'s testimony that Hernandez had kissed her.

While the prosecutor complied with this ruling in his case in chief, Hernandez testified as follows during direct examination:

*Q.* Mr. Hernandez, did you ever touch this child, [C.C.]?

*A.* No, I haven't.

*Q.* Did you ever touch her in a sexual manner as she testified?

*A.* I never touched that child.

*Q.* Did you ever touch any child in the manner she testified?

*A.* I never touched any child.

Impeachment of a witness on cross-examination is proper to show that the witness lied in a specific portion of his testimony and that therefore his credibility concerning the rest of his testimony is questionable. See McCormick, Evidence (2d ed), § 47, p 100; 3 Weinstein's Evidence, ¶ 607[05], p 607-62. Cross-examination on collateral matters to impeach credibility is appropriate, subject to the discretion of the trial court.[1] MRE 611(b).

In the instant case, Hernandez' testimony on direct examination was broad enough to imply that he had never touched a child in an improper way—that he is not the type of person to engage in such activities. He stated, "I never touched any child." The prosecutor's questioning of Hernandez on cross-examination was a proper effort to impeach Hernandez' statement. *Cf. United States v Gaertner,* 705 F2d 210, 214-217 (CA 7, 1983) (cross-examination on prior drug convictions permissible to rebut defendant's assertions that he was a "clean-liver" not involved with drugs).

The use of K.P.'s testimony to impeach Hernandez' statements on direct and cross-examination is a more difficult question. The common-law rule that extrinsic evidence is not admissible to prove a collateral matter bars the admission of K.P.'s testi-

---

[1] If requested, a cautionary instruction stating that any evidence obtained under this line of questioning is for the limited purpose of impeaching the witness' credibility would be appropriate. MRE 105.

mony under the majority opinion. I question the viability of this doctrine in the context of impeachment by contradiction.

The policy concerns addressed by the collateral-matter doctrine include protection against undue prejudice, confusion of the issues, and waste of trial time which extrinsic proof on collateral matters could create. McCormick, *supra,* p 101. These same concerns are evidenced in MRE 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In my view, the question of when contradiction by extrinsic evidence is permissible is better left to the discretion of the trial court under MRE 403 than in the automatic exclusion required by the collateral-matter doctrine. See Weinstein, *supra,* p 607-67.

Federal courts allow contradiction by extrinsic evidence where a defendant testifies to specific facts on direct examination. *Walder v United States,* 347 US 62; 74 S Ct 354; 98 L Ed 503 (1954); *United States v Benedetto,* 571 F2d 1246, 1250 (CA 2, 1978); *Carson v Polley,* 689 F2d 562, 574-575 (CA 5, 1982). When the testimony to be contradicted is elicited on cross-examination rather than on direct examination, some courts are less likely to allow contradiction by extrinsic evidence because that would allow prosecutors to subvert the policies limiting admissibility under Rules 404, 608, and 609 by making every statement elicited on cross-examination a credibility issue subject to impeachment by extrinsic evidence. See, *e.g., United States*

*v Pantone,* 609 F2d 675 (CA 3, 1979). Weinstein, *supra,* pp 607-71 to 607-72, observes that "[p]rosecutors should not be permitted to escape the restrictions of Rules 404, 608, and 609 by framing questions which, although within the scope of direct examination, have as their objective trapping the defendant into opening the door to impeachment by contradiction."

I believe the better rule to be that statements made by a defendant on direct examination may be contradicted by extrinsic evidence that directly rebuts the assertions made on direct examination. The admissibility of such extrinsic evidence should lie within the discretion of the trial court subject to MRE 403 balancing. For statements elicited by the prosecution on cross-examination, the presumption should be against admitting rebuttal evidence which could have been admitted in the case in chief unless it is admissible on some other recognized evidentiary basis.[2]

Although the preferable rule is that where the defendant makes a statement on direct examination he can be contradicted by extrinsic evidence, in this instance I agree with the majority for two reasons. First, it is not clear that K.P.'s testimony directly contradicted Hernandez' testimony on direct examination. *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974). Second, K.P.'s testimony was clearly prejudicial. Therefore, the admission of K.P.'s testimony constitutes error requiring reversal.

---

[2] The following cases cited in the majority opinion involved extrinsic evidence used to rebut statements elicited on cross-, rather than direct, examination: *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974); *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975); *People v Losey,* 413 Mich 346; 320 NW2d 49 (1982).