# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

HARVEY DEANDRE MOORE,

      Defendant-Appellant.

UNPUBLISHED
December 29, 2016

No. 327836
Wayne Circuit Court
LC No. 14-007030-01-FC

Before: GADOLA, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317,[1] two counts of assault with intent to commit murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. He was sentenced, as a third habitual offender, MCL 769.11, to concurrent prison terms of 44 to 70 years for the murder conviction, life imprisonment for each assault with intent to commit murder conviction, and 6 to 10 years for the felon-in-possession conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

Defendant's convictions arise from the July 14, 2015 death of Cortez McCoy ("McCoy"), who was shot while standing near his car. Jermaine Bryant ("Bryant"), who was also near the car, was shot in the shoulder, but he survived. McCoy's six-month-old daughter was in the backseat of the vehicle at the time of the shooting. The shots shattered the back window of the car, but the child was not struck or injured.

Witnesses testified that defendant emerged from the porch of his house armed with a long gun, which he fired repeatedly in an apparently random manner, as he walked toward the street. After the shooting, defendant left the scene in his vehicle and was involved in an automobile accident a few miles away shortly thereafter.

---

[1] Defendant was originally charged with first-degree premeditated murder, MCL 750.316(1)(a).

-1-

The defense theory was that defendant acted in self-defense and in defense of his wife. Defendant claimed that, shortly before the shooting, he was assaulted by Wondell Powell and an unidentified man at an abandoned house near his home. Defendant testified that Bryant assisted the other two men by holding open the door to the abandoned house where the men assaulted defendant. He claimed that he eventually was able to break away from his attackers and return to his home, where his wife was present. Defendant said that someone then kicked in the side door of the house, so he grabbed a rifle and chased the intruders out of the residence, firing several shots. Afterward, defendant claimed that he ran out of ammunition, so he drove away in his SUV. Defendant explained that he then blacked out while he was driving, resulting in the car accident.

The jury rejected defendant's claims of self-defense and defense of his wife, convicting him of the aforementioned offenses.

## II. EXTRINSIC IMPEACHMENT EVIDENCE

Defendant first argues that he was denied a fair trial when the prosecutor, while cross-examining him at trial, (1) questioned him regarding whether he was, in fact, legally married, and (2) introduced a jailhouse recording of a conversation between himself and a female friend known as "Heavy Duty" to show that he was possibly involved in a relationship with Heavy Duty and further undermine the validity of, and his dedication to, his marriage. Defendant also argues that defense counsel was ineffective for failing to object to the prosecutor's questions and the admission of the jailhouse recording. We agree that the evidence was improperly admitted, but conclude that reversal is not warranted on this basis.

## A. STANDARD OF REVIEW

Defendant concedes that the defense did not object to the prosecutor's questions or to the admission of the jailhouse recording, leaving this issue unpreserved. "We review unpreserved evidentiary error, including alleged constitutional error, for plain error." *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). To demonstrate plain error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; second alteration in original).

Because defendant did not move for a new trial or a *Ginther*[2] hearing in the trial court, our review is limited to mistakes apparent from the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009); *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Petri*, 279 Mich App at 410, citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

In order to prove that defense counsel provided ineffective assistance, a defendant must demonstrate that (1) " 'counsel's representation fell below an objective standard of reasonableness,' " and (2) defendant was prejudiced, *i.e.*, " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669-671; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), quoting *Strickland*, 446 US at 694. "A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

## B. ANALYSIS

At trial, defendant testified that he was acting in self-defense and in defense of his wife when he fired the gunshots. On cross-examination by the prosecutor, defendant admitted that he did not warn his wife when he thought that someone was trying to break into the house, and he did not go back inside the house after the shooting to check on his wife's safety. The prosecutor then elicited from defendant that he had a close female friend known as "Heavy Duty," but defendant denied that he was romantically involved with her. The prosecutor also played excerpts of a recorded telephone call between defendant and "Heavy Duty," during which "Heavy Duty" stated that she was tired of people mistaking her for defendant's wife, and defendant made statements suggesting that he was not actually married.

During his closing argument, the prosecutor refuted defendant's claim that he acted to protect his wife by pointing out that he did not warn her of a possible intruder, and that he did not check on her after the shooting to make sure she was safe. The prosecutor further argued that defendant did not care about his wife and that he would not even admit that she was his wife to his friends or "people that he wants to get with."

Defendant argues on appeal that the prosecutor improperly used extrinsic evidence to impeach him on a collateral matter. We agree that the prosecutor's method of impeachment was improper. MRE 608(b) provides, in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

"As a general rule, . . . a witness may not be contradicted regarding collateral, irrelevant, or immaterial matters." *People v Vasher*, 449 Mich 494, 504; 537 NW2d 168 (1995). Likewise, "it has long been the law of this state that a cross-examining attorney must accept the answer given by a witness regarding a collateral matter." *LeBlanc*, 465 Mich at 590. A collateral matter is "[a]ny matter on which evidence could not have been introduced for a relevant purpose." *People v Steele*, 283 Mich App 472, 488; 769 NW2d 256 (2009) (quotation marks omitted), quoting *Black's Law Dictionary* (8th ed). However, impeachment evidence is not collateral if it concerns "matters 'closely bearing on defendant's guilt or innocence,' " *LeBlanc*, 465 Mich at 590 (citation omitted), or "facts directly relevant to the substantive issues in the case," *People v Rosen*, 136 Mich App 745, 759; 358 NW2d 584 (1984), following *People v Guy*, 121 Mich App 592, 604-605; 329 NW2d 435 (1982), and McCormick, Evidence (2d ed), § 47, pp 98-99. Additionally, matters that are not considered collateral include "facts showing bias, interest, conviction of crime and want of capacity or opportunity for knowledge," and "any part of the witness's account of the background and circumstances of a material transaction which as a matter of human experience he would not have been mistaken about if his story were true." *Id*.

We agree with defendant that his marital status was a collateral issue, and that it was improper to admit the recording of defendant's telephone call with "Heavy Duty." It was the prosecutor who first questioned defendant about whether he loved his wife. The prosecutor could not make that subject a relevant issue in this case merely by introducing that subject on cross-examination. See MRE 611(c); *People v Figgures*, 451 Mich 390, 401; 547 NW2d 673 (1996); *People v Hernandez*, 423 Mich 340, 351-352; 377 NW2d 729 (1985). Cf. *People v Jackson*, 108 Mich App 346, 349; 310 NW2d 238 (1981) (discussing the permissible scope of cross-examination). It was therefore improper for the prosecutor to use defendant's response, that he loved his wife, to impeach him with the jail call recording.

Moreover, information about defendant's marital status, *i.e.*, whether he believed he was married, whether he loved his wife, and whether he was interested in an extramarital affair, was not relevant to his self-defense claim—as having a close relationship with a potential victim is not necessary in order to act in defense of that person—or to any other substantive issue in the case. See MRE 401 (defining "relevant evidence"); MRE 402 (stating that, except as otherwise provided, "[a]ll relevant evidence is admissible"); MCL 780.972 (describing an individual's right to use deadly force in self-defense or defense of another individual); *People v Guajardo*, 300 Mich App 26, 34-36; 832 NW2d 409 (2013) (describing lawful self-defense and defense of others under Michigan common law and statutory law); *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011) (also discussing lawful self-defense). Defendant did not have to demonstrate that he acted in defense of a loved one in order to raise self-defense. See MCL 780.972; *Guajardo*, 300 Mich App at 34-36; *Orlewicz*, 293 Mich App at 102. As such, whether defendant cared for or loved his wife, or was legally married to her, was a collateral issue that had no bearing on defendant's guilt or innocence. To the extent that evidence concerning this issue may have reflected on defendant's credibility, it was similarly improper for the prosecutor to introduce the issue and then use the extrinsic recording to impeach defendant's testimony that he loved his wife and was concerned for her safety. See MRE 608(b); *LeBlanc*, 465 Mich at 590; *Vasher*, 449 Mich at 504.

Accordingly, we conclude that the prosecutor's use of this extrinsic evidence to impeach defendant on a collateral matter constituted plain error. See *Carines*, 460 Mich at 763-764. In

-4-

addition, given its clear inadmissibility—and the lack of a plausible purpose or trial strategy for defense counsel's failure to raise an objection to the evidence—we conclude that it was objectively unreasonable for defense counsel to fail to object to this evidence. See *Vaughn*, 491 Mich at 669-671. However, we also conclude that the error did not affect defendant's substantial rights because it was not outcome determinative, see *Carines*, 460 Mich at 763, and that defendant was not prejudiced by defense counsel's failure to object because there is not a reasonable probability that the result of the trial would have been different but for the improper impeachment, see *Vaughn*, 491 Mich at 669-671.

Although the jury heard evidence indicating that defendant questioned the validity of his marriage and had a possible romantic interest in "Heavy Duty," substantial evidence supported the prosecutor's position that defendant was not acting in defense of his wife during the offense. Defendant admitted that he did not warn his wife when he thought someone was attempting to break into his house. In addition, after running out of ammunition, defendant fled from the scene and did not attempt to check on the safety of his wife or warn her of any perceived danger. On the whole, the evidence did not show that defendant did anything to protect his wife, beyond firing at the individuals outside of his home. Most significantly, defendant claimed that he was acting in defense of both his wife *and himself*, based on the fact that he had been assaulted by the men and subsequently threatened inside his own home. Because defendant's claim at trial was that he acted to protect himself, in addition to his wife, his self-defense theory did not depend on whether the jury believed that he had a genuine interest in his wife's safety.

Therefore, reversal is not warranted based on this evidentiary error, as the improper impeachment evidence was not outcome determinative, and defendant was not prejudiced by defense counsel's failure to object.

## III. SUPPLEMENTAL JURY INSTRUCTIONS

Defendant next argues that the trial court erred when it gave a supplemental jury instruction on the assault element of the assault with intent to commit murder and assault with intent to do great bodily harm less than murder charges, but did not reinstruct the jury on the necessary intent for the charged offenses, *i.e.*, an intent to commit murder or an intent to do great bodily harm less than murder. Defendant's claim has no merit for two reasons.

First, because defense counsel affirmatively approved the trial court's supplemental jury instruction, defendant's substantive claim of instructional error has been waived. *People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009). Therefore, we limit our review to defendant's alternative claim that defense counsel was ineffective for approving the trial court's supplemental instruction. Because the supplemental instruction was proper, we reject defendant's ineffective assistance of counsel claim.

"A defendant is . . . entitled to have all the elements of the crime submitted to the jury in a charge which [is] neither erroneous nor misleading . . . ." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011) (quotation marks and citation omitted; alteration and omission in original). However, perfect instructions are not necessary; a jury instruction is sufficient "if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id*. at 501-502.

At the end of the trial, the court instructed the jury on the elements of assault with intent to commit murder and the lesser offense of assault with intent to do great bodily harm. However, the court stated that the first element of those offenses was that "defendant tried to physically injure another person." After the jury began its deliberations, it asked the court to define the assault element of those offenses. The court responded by providing a more comprehensive supplemental instruction that defined "assault" in terms of a simple assault. The court did not provide any additional instructions regarding the remaining elements of the charged assault offenses, including the intent required for both offenses, because the jury did not inquire about those elements.

Contrary to defendant's claim, the trial court's supplemental instruction did not suggest that it could convict defendant of assault with intent to commit murder upon proof of only a simple assault. The jury only requested clarification on the assault element, and the court made it clear that it was only providing clarification of that specific element, which applied to both assault with intent to commit murder and assault with intent to do great bodily harm. The court properly limited its response because the jury's inquiry was limited to one element of the offenses. It is clear from the record that the court's supplemental instruction was only intended to supplement the assault element discussed in the original instructions and did not purport to address the remaining elements of the offenses.

Considering the trial court's instructions as a whole, the limited scope of the jury's inquiry, and the court's supplemental explanation, there is no indication that the jury believed that it could convict defendant of assault with intent to commit murder based on proof of a simple assault. Cf. *Kowalski*, 489 Mich at 501 (stating that jury instructions are reviewed "as a whole, rather than piecemeal," on appeal). Accordingly, defense counsel was not ineffective for approving the court's supplemental instruction because the instruction was proper. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## IV. CONCLUSION

Defendant has failed to establish that any of his claims on appeal warrant relief.

Affirmed.

/s/ Michael F. Gadola
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan