# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 31, 2016

Plaintiff-Appellee,

v

No. 320559
Wayne Circuit Court
LC No. 13-008885-FH

REGINALD DESHAWN WALKER,

Defendant-Appellant.

Before: METER, P.J., and WILDER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of possession with intent to deliver 50 grams or more, but less than 450 grams, of cocaine, MCL 333.7401(2)(a)(*iii*); possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*); possession with intent to deliver the controlled substance hydrocodone (Vicodin), MCL 333.7401(2)(b); possession with intent to deliver the controlled substance alprazolam (Xanax), MCL 333.7401(2)(c); and possession of marijuana, MCL 333.7403(2)(d). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 24 to 50 years' imprisonment for the cocaine conviction, 15 to 30 years' imprisonment for the heroin conviction, 15 to 30 years' imprisonment for the hydrocodone conviction, 5 to 15 years' imprisonment for the alprazolam conviction, and 176 days (time served) for the marijuana conviction. We affirm, but remand for the ministerial task of amending a clerical error in the judgment of sentence.

## I. FACTS

This case arose from an incident in which police officers recovered drugs from a house and from defendant's pocket. Taylor Police Officers Ricky Barnosky and Daniel Toth arrived at the scene of the incident after receiving information regarding a crime that occurred at a Red Roof Inn. The two officers received information regarding the location of a vehicle that was involved in the Red Roof Inn incident, and arrived in the area of Superior and Marvin in Taylor, Michigan. They saw a vehicle that matched the description of the vehicle involved in the incident parked outside of a house. The two officers called for backup, and additional police officers arrived at the scene. Officer Toth knocked on the door of the house, and the owner of the house, Johnny Nettleton, answered the door. He told the officers that they could come in and search the whole house because he had nothing to hide. As the officers attempted to enter the

-1-

house, the door was pushed closed from the inside. Officer Barnosky and Taylor Police Officer Philip Collop saw that defendant was the person pushing the door closed.

The officers pushed their way into the house. Defendant was standing near the door of the house when the police officers entered it. There were multiple people in the house. Taylor Police Officer Dominic Diggs-Taylor recovered a bag containing a variety of controlled substances near the stairs, which were by the door that the officers came through. Officer Collop detained and searched defendant. He found crack and powder cocaine on defendant. He also found $5,311 in small denominations on defendant during the search. Taylor Police Detective Steven Schwein conducted a search of the home after obtaining a search warrant. He found a prescription pill bottle with defendant's name on it during the search. The prescription was for Metformin. The officers also found Metformin pills in the bag of drugs that they recovered from the home, but the pills had a different dosage and shape from the ones that were found in the prescription pill bottle.

## II. MOTION TO SUPPRESS

Defendant first argues that the trial court erred when it denied his motion to suppress because the police officers unlawfully entered Nettleton's home, without valid consent. We disagree.

This Court reviews for clear error the trial court's findings of fact during a hearing on a motion to suppress evidence under the theory that the police violated the defendant's constitutional rights. *People v Hill*, 299 Mich App 402, 405; 829 NW2d 908 (2013). "However, matters regarding the application of facts to constitutional principles, such as the right to be free from unreasonable searches and seizures, are reviewed de novo." *Id*.

The Fourth Amendment of the United States Constitution protects an individual from unreasonable searches and seizures. US Const, Am IV. " 'Searches and seizures conducted without a warrant are unreasonable per se, subject to several specifically established and well-delineated exceptions.' " *People v Brown*, 279 Mich App 116, 131; 755 NW2d 664 (2008) (citations omitted). Consent to the search constitutes an exception to the warrant requirement. *Id*. The consent must be "unequivocal, specific, and freely and intelligently given." *People v Galloway*, 259 Mich App 634, 648; 675 NW2d 883 (2003). Whether the search is valid depends on the totality of the circumstances. *Id*. Consent may be revoked. *People v Frohriep*, 247 Mich App 692, 703; 637 NW2d 562 (2001). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect." *Id*. (citations and quotation marks omitted). "Generally, that consent must come from the person whose property is being searched or from a third party who possesses common authority over the property." *Brown*, 279 Mich App at 131. There is common authority if the owner and third party have mutual use of the property and joint access or control of the property for most purposes. *Id*. "Further, a third party without actual authority to consent to a search may render a search valid if the police officer's belief in the authority to consent was objectively reasonable." *Id*. However, a third party may not give valid consent to a search if the property owner is present and objects. See *id*. at 131-132. A police officer does not need to locate the owner of the property when the owner is absent in order to obtain consent to the search. See *id*. at 132.

The court held a hearing on the motion to suppress on January 17, 2014.  The prosecutor conceded that standing was not an issue because defendant was a legitimate overnight guest and had standing to challenge the search.  Officer Barnosky testified that on August 21, 2013, he and Officer Toth went to the area of Superior and Marvin to find several people involved in an assault.  Eventually, there were approximately seven or eight officers at the scene.  The officers gathered in front of the porch of the house, and Officer Toth knocked on the door.  Nettleton came out of the house and stated that he was the homeowner.  He appeared relaxed.  The officers asked Nettleton who was inside the house, and Nettleton replied that some friends were in the house.  Officer Toth asked Nettleton if the officers could come in and speak with them, and Nettleton replied that he had nothing to hide.  Nettleton stated that the officers could search the entire house.  None of the officers threatened Nettleton.  Officer Toth went to walk into the house, but a man pushed the door closed.  Nettleton did not say anything when the man pushed the door closed.  The officers forced their way inside.  Nobody told the officers not to come in.  Nettleton did not revoke his consent at any point.  Instead, Officer Toth believed that he had permission to enter the house.

The officers went into the house and saw a man standing on the other side of the door and several other people in the living room of the house.  The officers detained the people in the house and looked for weapons, and the officers again asked Nettleton for permission to search the house.  Nettleton stated that the officers could search the house.  He added, "I have nothing to hide.  You can search the entire house."  The officers searched the house.  Detective Schwein interviewed Nettleton after the incident.  Nettleton told Detective Schwein that he was the homeowner, but that he did not give the officers permission to enter the house.  However, Detective Schwein was not at the scene of the incident when the incident occurred, and over 12 hours passed between the incident and the interview.

Nettleton testified at the hearing that the officers knocked on the door during the incident, and he believed that it was one of his friends.  Nettleton opened the door and started to walk outside.  He saw police officers standing outside of his house on his driveway and by the tree line.  Nettleton did not speak to the officers, and the officers did not ask him any questions.  According to Nettleton, three officers rushed at him, picked him up, and threw him through the front door.  Nettleton did not tell the officers to come inside and that he had nothing to hide.  Defendant attempted to shut the door when the officers were rushing at Nettleton.  Nettleton also attempted to shut the door.  Nettleton was in the doorway when defendant attempted to close the door.  Nettleton told Detective Schwein that he did not give the officers permission to enter his house, but he gave Detective Schwein permission to enter his house during his questioning after the incident.  According to Nettleton, he did not have drugs in his house.  The court denied the motion to suppress.  The court noted that there were only minor discrepancies between the officers' testimony, while Nettleton's testimony was not believable.  The court reasoned that both Officer Barnosky and Officer Toth testified that Nettleton came out onto the porch and indicated that he did not have anything to hide.

The trial court did not err when it denied defendant's motion to suppress because there was evidence presented at the hearing that Nettleton gave his consent for the officers to enter his house and search it.  The prosecutor conceded that defendant had standing to challenge the search as an overnight guest in the home.  An overnight guest has standing to challenge the admission of evidence obtained as the result of an unlawful entry into the home.  See *People v*

*Parker*, 230 Mich App 337, 340; 584 NW2d 336 (1998). There was evidence presented at the hearing that defendant was an overnight guest in the house because the search took place overnight and defendant was a guest in the house during the search. Thus, defendant had standing to challenge the constitutionality of the search. See *id*.

Nevertheless, the trial court did not err. According to Officers Barnosky and Toth, Nettleton gave his consent to the search; this triggered the consent exception to the warrant requirement. See *Brown*, 279 Mich App at 131. The evidence indicated that the consent was freely and intelligently given, because Officers Barnosky and Toth testified that Officer Toth asked Nettleton if the officers could enter the house and the officers did not threaten Nettleton into giving his consent. Additionally, the consent was unequivocal and specific because the officers testified that Nettleton stated that he had nothing to hide and that the officers could search the entire house. See *Galloway*, 259 Mich App at 648. Nettleton gave his consent to the search on two different occasions, including *after* defendant attempted to push the door closed, which further indicates that he unequivocally and specifically consented.

In addition, although defendant's act of closing the door suggested that he did not consent to the search, there is no indication that defendant possessed any common authority over the house so that he was able to revoke Nettleton's consent. There was no indication that defendant lived at the house or spent any time at the house other than for the duration of the party. Nettleton did not revoke his consent to the search at any point in time. Thus, Nettleton gave his consent to the search, and defendant's action in forcing the door closed did not retract the consent because defendant, even if he had standing under *Parker* to raise the instant legal challenge, lacked authority to retract the consent to the search by the homeowner. See, generally, *Brown*, 279 Mich App at 131 (discussing common authority).

### III. JUDICIAL BIAS

Defendant next argues that the trial judge exhibited bias when the judge made several statements allegedly indicating that the jury should reject the defense theory, stated that the defense theory was false, indicated that the bag of drugs was found at defendant's feet, and told the jury that certain facts that were disputed were in fact established. We agree that the trial court exhibited bias when he stated that the redirect examination of defendant left the jury with the false impression that defendant was only a drug user, but conclude that the error did not seriously affect the fairness, integrity, or public reputation of the trial proceedings.

A defendant must raise a claim of judicial bias in the trial court in order to preserve the issue for appellate review. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Defendant failed to raise a claim of judicial bias in the trial court. Therefore, the issue is unpreserved. See *id*.

This Court reviews an unpreserved claim of judicial bias for plain error affecting the defendant's substantial rights. *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). With regard to the last requirement, the defendant must show prejudice, meaning that the error affected the outcome in the trial court. *Id*. Finally, "[r]eversal

-4-

is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (citation and quotation marks omitted; second alteration in original).

A criminal defendant is entitled to a trial by "a 'neutral and detached magistrate.' " *Jackson*, 292 Mich App at 597 (citation omitted). There is a heavy presumption that a trial judge was impartial. *Id*. at 598. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." See *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015). A single act of misconduct may pierce the veil of judicial impartiality. See *id*. This Court considers a variety of factors in determining whether a trial judge's conduct pierced the veil of judicial impartiality,

> including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

One form of judicial bias is biased commentary in front of the jury. *Id*. at 173. The tone and demeanor of the trial judge can suggest bias or prejudice, and a trial judge may exhibit bias without intending to do so. *Id*. at 174-175. The bias of the trial judge may be exhibited in the trial judge's words. *Id*. at 175. Further, reversal is proper " 'when the trial judge's questions or comments were such as to place his great influence on one side or the other in relation to issues which our law leaves to jury verdict.' " *Id*. at 177 (citation omitted). In general, a trial judge's comment that is hostile to or critical of a party is not sufficient to pierce the veil of judicial impartiality. *Jackson*, 292 Mich App at 598. A trial judge's rulings or opinions do not pierce the veil of judicial impartiality " 'unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible.' " *Id*. (citation omitted). A curative jury instruction weighs against a finding that the trial judge was biased because a jury is presumed to follow its instructions, but the trial court may overstep its role so that even a jury instruction does not cure the error. *Stevens*, 498 Mich at 177-178.

Defendant argues that the trial judge pierced the veil of judicial impartiality when he made several comments. Defendant argues that the trial judge exhibited bias when he made the following statement in ruling on the proposed admission of evidence:

> [*Defense Counsel*]: This evidence is going to show that Mr. Walker was in possession with intent only for personal use of the drugs on his, on his person.

> *The Court*: Well, people who sell drugs may also use them. They usually do actually as you know. And so that doesn't rule out that he may have also been selling or distributing drugs. It's not probative of anything.

Although this comment was critical of the defense and the jurors may have interpreted the comment to mean that defendant sold drugs, the comment did not pierce the veil of judicial impartiality because the trial judge directed his comment at defense counsel, rather than at defendant, and the comment provided an explanation of the judge's reasons for refusing to admit evidence, rather than an explanation regarding why he believed that defendant was guilty. Therefore, the trial court's comment did not pierce the veil of judicial impartiality. See *Stevens*, 498 Mich at 171-172, and *Jackson*, 292 Mich App at 598.

Defendant also argues that the trial judge exhibited bias when he stated in the context of denying defendant's request to present evidence that he was a drug user, "Mr. Short, the man is charged with being in possession of drugs with the intent to sell or distribute. His use habits are not relevant to that charge. He's acknowledged that he uses drugs. I, I don't know how this is -- this, this would lead us anywhere fruitful," and stated, "I mean it also invites -- frankly, you know, opening that door, it invites inquiry into how he supports his habit, too, doesn't it. So let's just leave it alone." The trial judge's statements did not pierce the veil of judicial impartiality. The trial judge explained that he refused defendant's request to admit evidence regarding his use of drugs because it would open the door to allow the prosecution to discover how he supported his drug addiction. The trial judge did not state that defendant sold drugs or possessed the drugs found on him with the intent to deliver. Instead, the judge was merely pointing out that the prosecution could seek to discover how defendant was supporting his drug habit. Therefore, the trial judge did not exhibit bias during the exchange. See *Stevens*, 498 Mich at 171-172, and *Jackson*, 292 Mich App at 598.

Defendant also argues that the trial court exhibited bias and contributed to the ongoing bias during the trial when he stated during his final jury instructions:

> It is within the range of your -- the -- within the parameters of your findings as a jury to, to either believe or disbelieve that the defendant had possession of the larger amount of cocaine, the cocaine that was found on the floor by his, according to some of the testimony, near the defendant's feet and add that to the cocaine that was found in his pocket.

The trial judge did not exhibit bias when he made the statement. Police adequately explained that the bag of drugs was found where defendant's feet had been during the initial entry into the house, rather than where defendant's feet where when he was arrested. Thus, there was testimony that the bag of drugs was found where defendant's feet were. To the extent that the trial judge misspoke when he stated that there was evidence that the bag of drugs was found "near the defendant's feet," rather than "near where the defendant's feet had been," the misstatement did not pierce the veil of judicial impartiality. See *Stevens*, 498 Mich at 171-172, and *Jackson*, 292 Mich App at 598.

Finally, defendant takes issue with the following statements of the trial court in the presence of the jury regarding the admission of defendant's prior convictions:

> I used some very careful circumspection here in what I allowed [the prosecutor] to get into in terms of the defendant's prior convictions for selling drugs. And I allowed her to get into only the 2004 -- '08 conviction in a case in

which Detective Schwein was involved for reasons that I stated on the record before the jury came out.

But the way you and your client conducted this redirect examination *it leaves the jury with the false impression that he is only a user and that he has received treatment for his use problem.* And there's a sort of a vague implication there that that was successful. And, of course, that is a completely false impression as the jury will soon learn because I'm gonna allow [the prosecutor] to get into the subsequent convictions.

The trial judge exhibited bias when he made the statements. The trial judge essentially stated that the defense theory was false when he stated that the redirect examination left the jury with the *false* impression that defendant was only a drug user and that he received treatment for his addiction. The trial judge pierced the veil of judicial impartiality because his statements were of a nature that could unduly influence the jury into believing that the defense theory was false. See *Stevens*, 498 Mich at 171-172, and *Jackson*, 292 Mich App at 598.

Judicial bias is a structural error. *People v Duncan*, 462 Mich 47, 52; 610 NW2d 551 (2000). In *People v Vaughn*, 491 Mich 642, 666; 821 NW2d 288 (2012), the Michigan Supreme Court clarified that a plain structural error violates the third prong in the *Carines* analysis. However, the Court clarified that, to warrant reversal, the error must have " 'resulted in the conviction of an actually innocent defendant' " or seriously affected the fairness, integrity, and public reputation of the trial proceedings. *Id.* (citation omitted). The issue is examined on a case-by-case basis and on the basis of the facts of each case. *People v Cain*, 498 Mich 108, 121; 869 NW2d 829 (2015).

Defendant does not argue that the bias resulted in his conviction in spite of the fact that he was actually innocent. Therefore, the issue is whether the bias seriously affected the fairness, integrity, and public reputation of the trial. See *Vaughn*, 491 Mich at 666. The court made the statements on only one occasion. Additionally, and very significantly, the court made the comments to defense counsel in the context of explaining its reasoning for allowing the prosecution to admit evidence of defendant's prior convictions. For these reasons, we conclude that the error did not seriously affect the fairness, integrity, and public reputation of the proceedings and the error does not require reversal. See *id.* at 666-667.

IV. REBUTTAL EVIDENCE

Defendant next argues that the trial court abused its discretion when it admitted evidence regarding his prior drug convictions. We disagree.

This Court reviews a trial court's ruling on the admission of evidence for an abuse of discretion. *People v Wood*, 307 Mich App 485, 500; 862 NW2d 7 (2014), vacated in part on other grounds ___ Mich ___; 871 NW2d 154 (2015). In addition, "[a]dmission of rebuttal evidence is within the sound discretion of the trial judge and will not be disturbed absent a clear abuse of discretion." *People v Figgures*, 451 Mich 390, 398; 547 NW2d 673 (1996). This Court reviews de novo any legal issues regarding the admissibility of the evidence. See *Wood*, 307 Mich App at 500.

-7-

The trial court has the duty to "evaluate the overall impression that might have been created by the defense proofs." *Figgures*, 451 Mich at 398. The trial court's discretion to determine whether to admit rebuttal evidence stems from its authority to determine whether evidence is substantially more prejudicial than it is probative. *Id*. at 399. "Rebuttal evidence is admissible to 'contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same.' " *Id*. (citations omitted). "The question whether rebuttal is proper depends on what proofs the defendant introduced and not on merely what the defendant testified about on cross-examination." *Id*. The test to determine whether the prosecution properly presented rebuttal evidence is to examine "whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant." *Id*. This Court examines whether the rebuttal evidence "is justified by the evidence it is offered to rebut." *People v Leo*, 188 Mich App 417, 422; 470 NW2d 423 (1991). Rebuttal testimony may not be admitted as a response to a collateral issue. See *People v Hernandez*, 423 Mich 340, 352; 377 NW2d 729 (1985). A collateral issue is one that is "not material to the resolution of the case." *Id*.

MRE 609(a) provides:

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

(1) the crime contained an element of dishonesty or false statement, or

(2) the crime contained an element of theft, and

(A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

(B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

-8-

MRE 404(b)(2) explains:

> The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

MRE 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Before cross-examination of defendant on January 29, 2014, the prosecutor argued that defendant opened the door to questioning regarding his prior convictions because he testified that he was a narcotics user and alleged that Detective Schwein was biased. The prosecutor explained that defendant was convicted on February 4, 2008, of a cocaine offense. Defendant was also convicted in August 2008 of delivery and manufacture of Xanax and delivery and manufacture of marijuana. Finally, the prosecutor stated that defendant was convicted on September 21, 2010, of possession with intent to deliver less than 50 grams of a controlled substance.

The court noted that the prior convictions were inadmissible under MRE 404(b) because the prosecution did not provide prior notice of its intent to offer evidence under the rule. The court also stated that the prior convictions were inadmissible under MRE 609. The court explained, however, that Detective Schwein's testimony on cross-examination, that he told defendant that he did not like defendant's lifestyle, opened the door for the jury to learn of defendant's prior drug offenses. He explained that the convictions showed why Detective Schwein did not like defendant and that that the reason went beyond the fact that defendant refused to cooperate in an investigation. The court ruled that the testimony was necessary in order to complete the record. The court explained that the probative value of the evidence was not outweighed by its prejudicial effect because defendant opened the door for admission of the prior convictions. The court limited the discussion of the prior convictions during cross-examination to discussion of the February 4, 2008, case because this was the only prior investigation in which Detective Schwein was involved.

During cross-examination, the prosecutor asked defendant whether he pleaded guilty to possession with intent to deliver cocaine. Defendant testified that he pleaded guilty on February 4, 2008, to possession with intent to deliver cocaine. Defendant acknowledged that Detective Schwein arrested him in 2007 with regard to the case and that the case occurred at around the same time as a murder case for which defendant was a witness. During redirect examination, defendant testified that he underwent drug addiction rehabilitation therapy because of his February 4, 2008, conviction. The court ruled that defendant's testimony during redirect examination opened the door for the prosecution to elicit testimony regarding the other prior convictions by giving the jury the "false impression" that defendant was only a drug user. The

prosecutor, during recross-examination, then elicited testimony from defendant regarding his August 7, 2008, convictions for possession with intent to deliver Xanax and possession with intent to deliver marijuana, as well as the September 21, 2010, drug conviction.

The prior convictions were not admissible under MRE 609 or MRE 404(b). A prosecutor is required to provide notice of her intent to introduce evidence under MRE 404(b)(2) in order to admit evidence under the rule. See MRE 404(b)(2). The prosecutor failed to provide notice of her intent to introduce evidence under MRE 404(b)(2). Further, the testimony was inadmissible under MRE 609 because the crimes did not involve an element of theft, dishonesty, or a false statement. See MRE 609(a).

However, the prior convictions were admissible as rebuttal evidence. The main defense theories at trial were that defendant only possessed the drugs in his pocket, defendant intended to use the drugs in his pocket, rather than sell them, and the Taylor Police Department was biased against defendant. The testimony regarding defendant's February 4, 2008, conviction was proper rebuttal evidence. Defendant testified during cross-examination that he has an unfriendly relationship with Detective Schwein because of a past incident in which he led Detective Schwein to believe that he was going to look for a friend who was accused of a crime, but he failed to do so. Detective Schwein testified on cross-examination that he told defendant during his interview with defendant in relation to the present case, "[Y]ou f***** me over back in the day, but I'm past it," "[W]hen you catch this felony, you're finally going to get what you deserve," "[Y]ou're a cancer," "I don't like your lifestyle," "[Y]ou put your a** on my plate and now you're mine," and "[P]art of me knew I was going to get played and that's exactly what happened." He explained on redirect that his "getting played" comment referred to a homicide case in which defendant was a witness.

We acknowledge that the testimony regarding defendant's February 2008 conviction was somewhat prejudicial to defendant because there was a risk that the jury would believe that he had a propensity to commit drug offenses, and the court could have limited the prejudicial effect of the prior conviction by prohibiting the prosecution from revealing the specific conviction on cross-examination. See MRE 403. However, the testimony rebutted defendant's contention that the police were biased against him by indicating that Detective Schwein was referring, in part, to defendant's prior violations of the law during the interview and when he made his "lifestyle" comment. See *Figgures*, 451 Mich at 399.

The admission of the other prior convictions also constituted proper rebuttal evidence. Defendant testified during redirect examination that he received treatment because of his February 4, 2008, conviction of possession with intent to deliver cocaine. The testimony supported the defense theory that defendant was a drug user, rather than a drug seller, by indicating that defendant had to seek treatment because of his conviction. The prior convictions tended to rebut the testimony and theory. The prior convictions were somewhat prejudicial because of the danger that the jury would find that defendant had a propensity to possess controlled substances with the intent to deliver or was a bad person who deserved to be punished. See MRE 403. However, defendant opened the door to the rebuttal evidence when he testified that he attended the rehabilitation program because his testimony tended to indicate that he was only a drug user. See, generally, *Figgures*, 451 Mich at 398-399. Additionally, the trial court instructed the jury that the prior convictions could only be used to address defendant's claim that

Detective Schwein was "piling on evidence" against him because Detective Schwein had a prior "beef" with defendant and to "answer the testimony that the defendant gave that he had been to drug rehabilitation after one of his offenses in 2008." The court instructed the jury not to consider the convictions to show that defendant is a bad person or had the propensity to commit crimes that involve drug sales. The specific jury instructions cured the prejudicial effect of the prior convictions. See MRE 403; see also *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011) (noting that the jury instructions cured or could have cured the evidentiary errors in the case). Accordingly, the trial court did not err in admitting the rebuttal evidence. See *Figgures*, 451 Mich at 398.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant argues in his Standard 4 brief on appeal that the trial court erred when it denied his motion for a directed verdict with regard to the charge of possession with intent to deliver 50 grams or more, but less than 450 grams, of cocaine because there was insufficient evidence to prove that there were over 50 grams of cocaine involved in the crime. We disagree.

"In reviewing the denial of a motion for a directed verdict of acquittal, this Court reviews the evidence in a light most favorable to the prosecution in order to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011) (citations and quotation marks omitted). The evidence that is considered is the evidence that the prosecution presented before the motion was made. See *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001). This Court does not interfere with the role of the trier of fact in weighing the evidence or determining the credibility of the witnesses. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

There was sufficient evidence for the trial court to submit the charge of possession with intent to deliver 50 grams or more, but less than 450 grams, of cocaine to the jury. "The elements of the charge of possession with intent to deliver cocaine, as applied to this case, are as follows: (1) the defendant knowingly possessed a controlled substance; (2) the defendant intended to deliver this substance to someone else; (3) the substance possessed was cocaine and the defendant knew it was cocaine; and (4) the substance was in a mixture that weighed" 50 grams or more but less than 450 grams. *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998); see also MCL 333.7401(2)(a)(*iii*).

Tiffany Staples, a Michigan State Police forensic scientist, explained at trial how she determined the weight of the cocaine in order to obtain an aggregate amount. Staples initially received a bag from the Taylor Police Department containing several smaller plastic bags containing off-white material, and she determined that the substance was cocaine. Staples weighed the contents of one of the bags of cocaine, and the substance weighed 0.21 grams. She explained that she did not weigh more of the cocaine during her initial round of testing because she believed that it would weigh less than 50 grams.

Staples tested an additional substance, which was identified in the test as cocaine and weighed 3.27 grams. Two more evidence bags were tested, and the result was that the substances were cocaine. Staples explained that one of the evidence bags contained 23 packages,

and Staples weighed and tested *one* of the packages. The cocaine in the package weighed 0.17 grams. Staples multiplied the weight of the one parcel of cocaine by 23 and approximated that the weight of all of the bags combined was 3.91 grams. She testified that all of the contents of the 23 bags were approximately the same size. The weight of another package containing cocaine was 11.03 grams. Staples counted the bags of cocaine from her first round of testing in which one rock of cocaine weighed 0.21 grams and determined that there were 163 plastic bags containing a substance that was similar in size, shape, and color to the cocaine she tested. Staples multiplied the weight of the cocaine that she tested in the initial round of testing by the number of wraps and obtained an approximate weight of 34.23 grams. Staples added up the weight of all of the items identified as cocaine, and the approximate weight was 52.44 grams.

This evidence was sufficient to submit the charge to the jury. The jurors were aware of how Staples arrived at the conclusion that the cocaine weighed approximately 52.44 grams. The jury could have found that each rock of cocaine weighed approximately the same amount and that the total amount of the cocaine was over 50 grams on the basis of Staple's testimony that one of the rocks weighed 0.21 grams and another weighed 0.17 grams, and it was the role of the jury to make this determination. See *Eisen*, 296 Mich App at 331, and *Hartuniewicz*, 294 Mich App at 242.

Defendant argues in his Standard 4 brief that the court erred because it did not combine Counts 1 and 2 in the felony information until after the court rendered its decision on the motion for a directed verdict. Defendant was originally charged in Count 1 of the information with possession with intent to deliver 50 grams or more, but less than 450 grams, of cocaine and in Count 2 of the information with possession with intent to deliver less than 50 grams of cocaine. The trial court explained when it rendered its decision on the motion for a directed verdict that the issue was a close call. The court noted that Staples could have weighed each rock of cocaine individually to obtain a more accurate amount, but noted that the jury was aware of how Staples determined that the cocaine weighed 52.44 grams. The court then combined Counts 1 and 2 in the felony information during the jury instructions and instructed the jury that it could find defendant (1) not guilty, (2) guilty of possession with intent to deliver greater than 50 grams of cocaine, (3) guilty of possession with intent to deliver less than 50 grams of cocaine, or (4) guilty of possession of less than 25 grams of cocaine. Defendant's argument appears to be that the prosecution initially charged him with two separate crimes for the cocaine found in the bag and the cocaine found in his pocket. However, the prosecutor explained that Count 2 was an alternative to Count 1 and that the two charges did not refer to separate amounts of cocaine. Therefore, the trial court did not err in deciding the motion for a directed verdict before it rearranged the charges in the felony information. Accordingly, the trial court did not err in denying the motion for a directed verdict. See *Hartuniewicz*, 294 Mich App at 242.

## VI. AGGREGATION OF COCAINE

Defendant next argues in his Standard 4 brief that the trial court erred when it permitted the prosecution to aggregate the crack cocaine and powder cocaine because the crack cocaine and powder cocaine constitute different prohibited substances. We disagree.

This Court reviews de novo issues of statutory interpretation. *People v Mineau*, 306 Mich App 325, 329; 855 NW2d 755 (2014). As stated above, "[t]he elements of the charge of

possession with intent to deliver cocaine, as applied to this case, are as follows: (1) the defendant knowingly possessed a controlled substance; (2) the defendant intended to deliver this substance to someone else; (3) the substance possessed was cocaine and the defendant knew it was cocaine; and (4) the substance was in a *mixture* that weighed" 50 grams or more but less than 450 grams. *Crawford*, 458 Mich at 389 (emphasis added). The statute corresponding with the crime of possession with intent to deliver 50 grams or more, but less than 450 grams, of cocaine specifies that the controlled substance may be in "any mixture containing that substance." See MCL 333.7401(2)(a)(*iii*). MCL 333.7214(a)(*iv*) provides that the following constitutes a controlled substance:

> Coca leaves and any salt, compound, derivative, or preparation thereof which is chemically equivalent to or identical with any of these substances, except that the substances do not include decocainized coca leaves or extraction of coca leaves which extractions do not contain cocaine or ecgonine. The substances include cocaine, its salts, stereoisomers, and salts of stereoisomers when the existence of the salts, stereoisomers, and salts of stereoisomers is possible within the specific chemical designation.

The statute does not distinguish between crack cocaine and powder cocaine. See *id*.

The trial court did not err when it permitted the prosecution to aggregate the crack cocaine and powder cocaine to obtain a threshold amount. There was testimony presented at trial that the total weight of the powder and crack cocaine was approximately 52.44 grams. The prosecution was permitted to aggregate the amounts of the two forms of cocaine in order to obtain the overall threshold amount. See MCL 333.7214(a)(*iv*). Therefore, defendant's argument fails. See *id*.

### VII. RIGHT TO PRESENT A DEFENSE

Defendant argues in his Standard 4 brief that the trial court erred when it refused to allow him to present a complete defense by barring admission of photographs showing that he lost weight while he was using drugs. We disagree.

This Court reviews de novo the issue whether a defendant was denied his right to present a complete defense. *People v Unger*, 278 Mich App 210, 247; 749 NW2d 272 (2008). In addition, as stated above, this Court reviews a trial court's ruling on the admission of evidence for an abuse of discretion. *Wood*, 307 Mich App at 500. This Court reviews de novo legal issues regarding the admissibility of the evidence. See *id*.

A criminal defendant has the right to present a defense. *Unger*, 278 Mich App at 250. However, the right to present evidence is not absolute, and there are other legitimate interests that may override the right to present certain evidence. See *id*. Rules that exclude evidence from criminal trials do not violate the defendant's right to present a defense unless the rules are "arbitrary," or "disproportionate to the purposes they are designed to serve." *Id*. (citations and quotation marks omitted). MRE 402 provides, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not

-13-

relevant is not admissible." MRE 401 defines the term "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See also *People v Benton*, 294 Mich App 191, 198; 817 NW2d 599 (2011). " 'Relevance involves two elements, materiality and probative value. Materiality refers to whether the fact was truly at issue.' " *Id*. at 199 (citation omitted).

Defendant testified at trial that he is a drug user and uses powder and crack cocaine. There was evidence presented at trial that defendant's weight fluctuates. Defendant testified that he weighed 386 pounds in January 2013. Defendant testified that he weighed approximately 340 pounds at the time of trial. In contrast, he weighed 275 pounds at the time of his arrest. Defense counsel sought to admit photographs from January 2013 and April 2013, which he argued showed defendant's progressive weight loss since he started using drugs. Defense counsel argued that the photographs were relevant to show that defendant possessed the drugs at issue in order to use them, rather than sell them. The trial court refused to admit the photographs.

The trial court did not err when it refused to allow defendant to admit the photographs because defendant failed to establish that the photographs were relevant. The fact at issue was whether defendant possessed the drugs in order to deliver them because defendant was charged with possession with intent to deliver. See *Benton*, 294 Mich App at 199. However, the photographs showing the effects of defendant's drug use did not tend to make less probable the alleged fact that he possessed the particular drugs at issue in order to deliver them. Contrary to defendant's assertion in his Standard 4 brief, the photographs did not show anything regarding defendant's mental capacity to sell drugs. Instead, the photographs merely "reiterated" defendant's own assertions that he is a drug user. The trial court did not err in refusing to admit the photographs because defendant fails to show that the photographs were relevant. See MRE 401 and *Benton*, 294 Mich App at 198-199. Defendant does not otherwise argue that the relevancy rules are arbitrary or disproportionate to the purposes they are designed to serve. See *Unger*, 278 Mich App at 250. Accordingly, defendant's argument fails. See *id*.

Defendant also argues that the trial court erred when it stated, "Mr. Short, the man is charged with being in possession of drugs with the intent to sell or distribute. His use habits are not relevant to that charge. He's acknowledged that he uses drugs. I, I don't know how this is -- this, this would lead us anywhere fruitful." Defendant argues that the trial court's statements amounted to a directed verdict of guilt and impermissibly shifted the burden of proof onto him because the court foreclosed the defense that he possessed the drugs for his own use. However, the court noted that defendant's particular use habits were not relevant to whether he possessed the drugs at issue in the case with the intent to deliver them. The court's statements did not amount to a directed verdict of guilty on any of the charges and did not shift the burden of proof onto defendant regarding the issue of intent because the jury was permitted to find that defendant possessed the drugs for his own personal use. Defendant's argument fails.

## VIII. REDIRECT EXAMINATION

Defendant next argues in his Standard 4 brief that the trial court abused its discretion when it refused to allow defense counsel to question defendant regarding his prior criminal

history after the prosecutor questioned defendant regarding his prior criminal history. We disagree.

This Court reviews a trial court's decision on an evidentiary issue for an abuse of discretion. *People v Danto*, 294 Mich App 596, 598-599; 822 NW2d 600 (2011). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*.

"[D]ecisions regarding the order and mode of presentation of evidence are within the discretion of the trial court." *People v Stevens*, 230 Mich App 502, 507; 584 NW2d 369 (1998). MRE 611(a) provides, "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." MRE 611(c) provides, "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. The judge may limit cross-examination with respect to matters not testified to on direct examination."

The trial court did not abuse its discretion when it refused to allow defense counsel to conduct another redirect examination regarding defendant's prior convictions. Defense counsel requested permission to conduct a second redirect examination of defendant after the prosecution cross-examined defendant regarding his prior convictions. The trial court refused to allow defense counsel to question defendant again and explained that defense counsel had already covered the issues. The trial court had the discretion to refuse to allow defense counsel to conduct another redirect examination. See *Stevens*, 230 Mich App at 507. The redirect examination likely would have amounted to needless consumption of time. See MRE 611(a). As the court explained, defense counsel already had the opportunity to conduct a redirect examination, and the jury already heard testimony on the issue of defendant's prior convictions. The trial court instructed the jury that it was to consider defendant's prior convictions for limited purposes. The trial court did not abuse its discretion when it refused to allow defense counsel to conduct another redirect examination of defendant. *Id*.

IX. JURY INSTRUCTIONS

Defendant next argues in his Standard 4 brief that the trial court denied him of his right to a properly instructed jury when it failed to instruct the jury regarding unlawful use of a controlled substance. We disagree.

A defendant must object in the trial court to the omission of a jury instruction in order to preserve an instructional error for appellate review. See *People v Cain*, 238 Mich App 95, 127; 605 NW2d 28 (1999). Defendant did not object to the trial court's failure to read the jury instruction regarding unlawful use of a controlled substance, and he did not request that the court read the instruction. Therefore, the issue is unpreserved. See *id*.

" 'Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion.' " *People v Henderson*, 306 Mich App 1, 3; 854 NW2d 234 (2014) (citation omitted). "With regard to unpreserved claims of instructional error, this Court reviews

such claims for plain error that affected substantial rights." *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001).

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *Wood*, 307 Mich App at 519 (citations and quotation marks omitted). The trial court must properly instruct the jury on the applicable law. *Henderson*, 306 Mich App at 4. "The jury instructions must include all elements of the charged offenses, and must not omit material issues, defenses, or theories that the evidence supports." *Wood*, 307 Mich App at 519. This Court examines the jury instructions as a whole to determine whether there was an error. *Id*. "Even when somewhat imperfect, jury instructions do not qualify as erroneous provided that they fairly present to the jury the issues to be tried and sufficiently protect the defendant's rights." *Id*.

The trial court did not deny defendant of his right to a properly instructed jury. M Crim JI 12.6 provides:

(1) The defendant is charged with the crime of illegally using a controlled substance, _____. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant used a controlled substance.

(3) Second, that the substance used was _____.

(4) Third, that at the time [he / she] used it, the defendant knew the substance was _____.

[(5) Fourth, that the substance was not obtained by a valid prescription given to the defendant.]

[(6) Fifth, that the defendant was not otherwise authorized by law to use this substance.]

M Crim JI 12.6 applies when the defendant is charged with illegally using a controlled substance. The prosecution did not charge defendant with the unlawful use of a controlled substance. In addition, there was no evidence presented at trial that defendant used the drugs that were found in his pocket and in the bag of drugs. Instead, the officers testified that the drugs were found in defendant's pockets and in a bag of drugs on the floor. Therefore, the trial court did not err when it failed to read M Crim JI 12.6 to the jury because the jury instruction was inapplicable to this case. See M Crim JI 12.6, *Wood*, 307 Mich App at 519, and *Henderson*, 306 Mich App at 4.

Further, even assuming that the trial court erred when it failed to instruct the jury regarding unlawful use of a controlled substance, the error was not outcome-determinative. As stated above, there was no evidence presented at trial that defendant actually used the cocaine that was found in his pocket or the controlled substances that were found in the bag of drugs on the floor. Therefore, to the extent that the trial court did err, defendant fails to show prejudice

-16-

because the jury could not have found defendant guilty of unlawful use of a controlled substance. See M Crim JI 12.6 and *Carines*, 460 Mich at 763.

## X.  CONFRONTATION AND FAIR TRIAL RIGHTS

Defendant next argues in his Standard 4 brief on appeal that the trial court denied him of his right to confront the witnesses against him and a fair trial when it refused to adjourn the trial until a witness was available to testify.  We disagree.

A defendant preserves the issue of whether he was denied his right of confrontation by objecting in the trial court.  See *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007).  Defendant did not object in the trial court that there was a violation of his right to confront the witnesses against him.  Therefore, the issue is unpreserved.  See *id*.  Similarly, the issue of whether a defendant was denied his right to a fair trial must be raised in the trial court in order to be preserved for appellate review.  See *People v Malone*, 193 Mich App 366, 371; 483 NW2d 470 (1992), aff'd 445 Mich 369 (1994).  Defendant failed to preserve the issue of whether the trial court denied him of his right to a fair trial by failing to raise the issue in the trial court. See *id*.

This Court reviews the unpreserved Confrontation Clause issue for plain error affecting defendant's substantial rights.  See *Carines*, 460 Mich at 763-764, and *People v Henry (After Remand)*, 305 Mich App 127, 152; 854 NW2d 114 (2014).

The United States and Michigan Constitutions grant a criminal defendant the right to confront the witnesses against him and the right to a fair trial.  See US Const, Am VI; Const 1963, art 1, § 20.  " 'As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness.' "  *Henry (After Remand)*, 305 Mich App at 153 (citation omitted).  A statement is testimonial if the primary purpose of the statement is to establish or prove "past events potentially relevant to later criminal prosecution." *Id*. (citations and quotation marks omitted).  A witness is a person who bears testimony against the defendant. *Id*.

Defendant abandons his argument regarding whether the trial court denied him of his right to a fair trial.  "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority."  *People v Schumacher*, 276 Mich App 165, 178; 740 NW2d 534 (2007) (citations and quotation marks omitted; alteration in original).  Defendant states that the trial court denied him of his right to a fair trial, but he only presents an argument regarding whether the trial court denied him of his right to confront the witnesses against him.  Defendant's claim is essentially a Confrontation Clause claim. Therefore, to the extent that defendant raises a claim that he was denied his right to a fair trial, the claim is abandoned.  See *id*.

Further, the trial court did not violate defendant's Confrontation Clause rights when it refused to adjourn the trial until Holly Ehrlich, the victim of the assault that occurred at the Red Roof Inn, was available to testify because Ehrlich did not make a testimonial, out-of-court

-17-

statement that was admitted at trial. The trial court prohibited the police officers from testifying at trial regarding Ehrlich's statements to the police. The trial court directed the officers to testify that there was another crime that occurred at the Red Roof Inn that prompted the officers to go to the area of the incident. Officers Barnosky and Toth testified that there was an investigation at the Red Roof Inn. The officers explained that they arrived at the scene of the incident through following the lead that they obtained during their investigation at the Red Roof Inn. Officer Barnosky added that the officers obtained information regarding a vehicle that was involved in the incident. The officers did not testify regarding what Ehrlich told them about defendant. Therefore, the trial court did not deny defendant his right to confront the witnesses against him because there was no out-of-court testimonial statement against defendant. See *Henry (After Remand)*, 305 Mich App at 153.

## XI. TRIAL ADJOURNMENT

Defendant next argues in his Standard 4 brief on appeal that the trial court erred when it refused to grant his motion for an adjournment. We disagree.

This Court reviews for an abuse of discretion a trial court's decision on a motion to adjourn. See *People v Steele*, 283 Mich App 472, 484; 769 NW2d 256 (2009). For a trial court to grant a motion for adjournment, the defendant must show good cause and the exercise of diligence. *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). The factors for determining whether there is "good cause" for the court to grant an adjournment include " 'whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.' " *Id*. (citation omitted). In addition, the defendant must show that he was prejudiced because of the trial court's abuse of discretion. *Id*. at 18-19. MCR 2.503(B) provides:

> (1) Unless the court allows otherwise, a request for an adjournment must be by motion or stipulation made in writing or orally in open court based on good cause.

> (2) A motion or stipulation for adjournment must state

> (a) which party is requesting the adjournment,

> (b) the reason for it, and

> (c) whether other adjournments have been granted in the proceeding and, if so, the number granted.

> (3) The entitlement of a motion or stipulation for adjournment must specify whether it is the first or a later request, e.g., "Plaintiff's Request for Third Adjournment".

The trial court explained that it would not adjourn the trial until Ehrlich became available because Ehrlich was not at the scene of the incident. Instead, Ehrlich made the initial emergency call from the Red Roof Inn that prompted the police to go to the scene of the incident. Defendant argues that Ehrlich would have testified that she never gave the police defendant's name or told

them that he was at the scene. Defendant also argues that Ehrlich's testimony would have established that the police officers falsified their reports and affidavits because of their bias against him. However, there is no indication that Ehrlich's testimony would have been relevant to whether defendant committed the charged crimes. As discussed above, the officers testified that they received information through an investigation at the Red Roof Inn that led them to the scene of the incident. The officers did not specifically refer to Ehrlich or her statements regarding defendant. Further, the officers did not testify regarding the probable cause to search and arrest defendant, and the officers arrested all of the people in the house. Thus, Ehrlich's proposed testimony did not make a material fact more or less probable than it would have been without her testimony. See MRE 401. Additionally, defendant did not otherwise argue in the trial court that the failure to adjourn the trial would deny him of any constitutional right. Thus, there was not good cause to adjourn the trial. See *Coy*, 258 Mich App at 18. Defendant also cannot show that he was prejudiced by the failure to adjourn the trial because Ehrlich's testimony would not have aided the defense in showing that the police were biased against defendant. See *id*. at 18-19. Therefore, defendant's argument fails.

## XII. SUBSTITUTE COUNSEL

Defendant next argues in his Standard 4 brief that the trial court abused its discretion when it denied his request to obtain substitute counsel. We disagree.

This Court reviews a trial court's decision regarding substitution of counsel for an abuse of discretion. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). " 'A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes.' " *Id*. (citation omitted).

The Sixth Amendment of the United States Constitution guarantees a defendant the right to counsel. US Const, Am XI; *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012). "However, [a] defendant 'is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced.' " *Id*. (citation omitted). The trial court appoints substitute counsel only when there is a showing of good cause and when substitution of counsel will not unreasonably disrupt the process in the trial court. *Strickland*, 293 Mich App at 397. " 'When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record.' " *Id*. (citation omitted). "Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Id*. (citations and quotation marks omitted). Whether good cause exists depends on the facts of each case. *Buie (On Remand)*, 298 Mich App at 67. In *Strickland*, 293 Mich App at 397, this Court held that the fact that the trial court received a copy of a grievance that the defendant filed against his attorney and allowed the defendant to " 'say whatever he wants to say' " on the record made the court aware of the defendant's complaints regarding his attorney. *Strickland*, 293 Mich App at 397.

This situation is unusual because defendant retained defense counsel, but requested that the trial court *appoint* substitute counsel. During the proceeding on January 23, 2014, defendant requested that the trial court appoint substitute counsel, and he did not request that the court

permit him to retain another attorney. Thus, the matter was within the discretion of the trial court. See *People v Arquette*, 202 Mich App 227, 231; 507 NW2d 824 (1993) ("[a]lthough substitution of appointed counsel is a matter within the sound discretion of the trial court, a defendant must be afforded a reasonable time to select his own retained counsel") (citation omitted).

In addition, the court did not err when it denied defendant's request to appoint substitute counsel because defendant failed to show good cause to appoint substitute counsel. The following conversation took place between defendant and the trial court:

> *Defendant Walker*: Sir, I have -- I would like to present questions to the jury myself.
>
> *The Court*: No.
>
> *Defendant Walker*: I won't be able to ask questions?
>
> *The Court*: You want to represent yourself in this case?
>
> *Defendant Walker*: No. I would like dismissal of counsel, yes, sir, and I would like to be appointed an effective counsel.
>
> *The Court*: Well, Mr. Short is a very capable attorney. He has appeared in front of me any number of times. And to come in here on the day of trial, the day where we are supposed to select a jury and to say oh, all of a sudden you want a new attorney, is a stall tactic, and we are not going to have that, Mr. Walker.

Defendant explained that he requested substitute counsel because defense counsel disclosed information regarding defendant's parole to the prosecutor, and the prosecutor mentioned the information during a motion hearing. Defendant stated that the fact that the prosecutor knew about the information indicated that defense counsel told her. The trial court stated that the information was revealed during the evidentiary hearing on the motion to suppress. The prosecutor stated that the officer-in-charge on the case, rather than defense counsel, told her the information regarding defendant's parole. Defendant pointed out that he retained his attorney and that his request was not a stall tactic. However, defendant was not ready to go forward with a new attorney on the day of the proceeding.

The trial court adequately inquired into the issue. The trial court allowed defendant to present an argument with regard to why he was requesting substitute counsel. The trial court did not need to ask defense counsel any questions in order to understand defendant's claim because the prosecutor stated that she obtained the information from the officer-in-charge, rather than from defense counsel. See, generally, *Strickland*, 293 Mich App at 397.

Additionally, defendant did not establish good cause for the trial court to appoint substitute counsel. Defendant's first reason for the request was that he believed defense counsel gave the prosecutor information that defendant told defense counsel. However, the prosecutor explained that she learned the information from the officer-in-charge, rather than from defense counsel. Defendant also points out on appeal that defense counsel failed to present two

-20-

necessary witnesses for the defense. However, defendant did not argue this point in the trial court. Instead, defendant merely pointed out that one of his witnesses was unavailable to testify at trial. He did not argue, in the context of his motion and at the time the trial court needed to decide the motion, that defense counsel failed to call her as a witness at trial. In fact, defendant requested substitute counsel before the start of trial, and defense counsel had not had the chance to present witnesses before defendant made his request. Therefore, defendant failed to establish good cause to appoint substitute counsel.

In addition, the trial court did not abuse its discretion when it decided that the appointment of substitute counsel would unreasonably disrupt the judicial process. The court noted that defendant was requesting a new attorney on the day scheduled for trial. Defendant agreed that he was not ready to proceed in the case with a different retained attorney. Instead, he requested that the trial court appoint him a new attorney. The court did not abuse its discretion when it determined that appointment of substitute counsel would unreasonably disrupt the judicial process because the trial would have to have been postponed in order to appoint substitute counsel and for counsel to become familiar with the case, and defendant was dilatory in making his request. See *id*. at 399 (appointment of substitute counsel would have unreasonably delayed the judicial process when the defendant waited until the day of trial to make his request). Accordingly, the trial court did not abuse its discretion. See *id*.

## XIII. BINDOVER

Defendant next argues in his Standard 4 brief that the district court improperly bound him over for trial because the information used to connect the drugs found in the house to defendant was false and the prosecution knew that it was false. We disagree.

" 'A circuit court's decision to grant or deny a motion to quash charges is reviewed de novo to determine if the district court abused its discretion in binding over a defendant for trial.' " *People v Bennett*, 290 Mich App 465, 479; 802 NW2d 627 (2010) (citation omitted).

A district court determines during a preliminary examination whether a crime was committed and whether there is probable cause to believe that the defendant committed it. *People v Redden*, 290 Mich App 65, 83; 799 NW2d 184 (2010). "Probable cause is established by evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Id*. at 83-84 (citations and quotation marks omitted). "In order to establish that a crime has been committed, the prosecution need not prove each element beyond a reasonable doubt, but must present some evidence of each element." *Id*. at 84. The defendant may be bound over for trial even if there is conflicting evidence or evidence that raises a reasonable doubt regarding the defendant's guilt. *Id*.

Defendant's argument is that the testimony presented at the preliminary examination regarding the Metformin pills differed from the testimony presented at trial. During the preliminary examination, Officer Toth testified that he found seven "Meterman" pills in the bag of drugs. Detective Schwein testified that he found a pill bottle with defendant's name on it in the kitchen of the house and identified the pills as Metformin. Detective Schwein testified that the pills in the bottle were the same as the seven pills found in the bag. He explained that the pills in the bag and the pills in the prescription bottle were both blue and had the same imprint on

them. At trial, Detective Schwein testified that the pills found in the prescription bottle were a different dosage and different shape from the ones found in the bag of drugs. Although the preliminary examination testimony regarding the Metformin pills differed slightly from the trial testimony regarding the Metformin pills, there was no conflicting testimony at the preliminary examination regarding the Metformin pills. Even if there were conflicting testimony regarding the Metformin pills, the district court properly bound defendant over for trial because a district court may bind a defendant over for trial even if there is conflicting testimony. See *id.* at 84. Therefore, the district court did not err in binding defendant over for trial. See *id.* In addition, there is no evidence that the prosecution withheld exculpatory evidence, as defendant argues in connection with this issue.

Further, there was sufficient testimony presented at the preliminary examination to provide probable cause that defendant possessed the bag of drugs even without the testimony regarding the Metformin pills. Possession can be either actual or constructive. *People v Williams*, 268 Mich App 416, 421; 707 NW2d 624 (2005). "Constructive possession exists if the defendant knew that the substance was present and had the right to exercise control over it." *Id.* In other words, there is constructive possession if " 'the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband.' " *Id.* (citation omitted). More than one person may jointly control a controlled substance. *Id.*

At the preliminary examination, Officer Barnosky testified that the officers arrived at the scene and encountered Nettleton, who gave them permission to enter the house. Defendant was standing to the right of the door and right next to the door when the officers entered the house. There were six or seven other people in the home when the officers entered it. Officer Diggs-Taylor encountered two people sitting on the couch, one person standing in the back of the front room toward the kitchen, and one person upstairs. Officer Diggs-Taylor saw a bag of narcotics on the ground near the foot of the stairs when he entered the home. The bag was a few feet away from the door. The bag of drugs was right behind the door, and defendant was by the bag of drugs. Defendant was the only person who was standing by the side of the door where the bag was found. Officer Diggs-Taylor retrieved the bag of drugs and took it to his patrol car. This testimony provided probable cause that defendant possessed the bag of drugs because defendant was standing right next to the bag of drugs, and no one else was standing near the door where the bag of drugs was found. See *id.* Accordingly, the district court did not err in binding over defendant for trial. See *id.*

XIV. IMPROPER WITHHOLDING OF EVIDENCE

Defendant next argues in his Standard 4 brief on appeal that the prosecutor knowingly withheld exculpatory evidence that would have proven that defendant was innocent when it withheld the records of the Metformin pills. We disagree.

This Court reviews de novo whether a defendant received due process. *People v Odom*, 276 Mich App 407, 421; 740 NW2d 557 (2007). "For a due process violation to result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense." *Id.* at 421-422.

" '[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). The government is responsible for the evidence that it has control over, even if the prosecution is not aware of the evidence. *Chenault*, 495 Mich at 150. The test to determine whether a *Brady* violation occurred is as follows: " 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' " *Id*. at 149-150 (citation omitted). In other words, the elements of a *Brady* violation are that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Id*. at 150. The evidence is material if " 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *Id*. (citation omitted). In other words, the test for materiality "is whether, in the absence of the suppressed evidence, the defendant 'received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' " *Id*. at 150-151 (citation omitted). A court will consider all of the evidence collectively in determining whether the evidence was material. *Id*. at 151.

Defendant fails to show that the prosecution suppressed evidence that was favorable to him and material to the case. First, defendant fails to show that the prosecution suppressed evidence. Defendant argues that the prosecution withheld the police reports or other records regarding the Metformin pills, which he claims would have shown that the Metformin pills in the bag of drugs differed from the Metformin pills that were found in the prescription bottle. Defendant raised the issue of discovery on the first day of trial, and he argued that the prosecution failed to provide him with police statements or reports connecting him with the drugs. However, defendant's attorney explained that the prosecution *did* provide the defense with a police report. He explained that defendant believed that each officer should have generated an individual police report, but that defense counsel was told that each officer's individual report is compiled into one report that is narrated by an officer. Officer Barnosky testified at trial that only one police report is generated in each investigation. Defendant fails to show that there were any additional reports or records other than the one police report that the prosecution gave defense counsel and that was discussed throughout trial. Therefore, the prosecution did not suppress evidence.

Second, even assuming that there were individual police reports, defendant fails to show that the reports were favorable to the defense. See *id*. at 150. Instead, it is not clear whether the reports would have connected the Metformin pills in the bag of drugs with the Metformin pills in the prescription bottle, and defendant fails to show how the reports would have been exculpatory or impeaching. See *id*.

Finally, defendant also fails to show that the reports would have been material. Defendant argues that the reports would have shown that the Metformin pills in the bag of drugs differed from those in the prescription bottle. However, Detective Schwein testified that the Metformin pills that he found in the prescription bottle were of a different dosage and had a different shape from the ones found in the bag of drugs. Therefore, defendant fails to show how

the result of the proceedings would have been different if he had been given more reports, because there was testimony presented at trial that the pills were not identical. See *id*. Defendant argues that defense counsel would have requested defendant's medical records and learned that defendant was not prescribed different dosages of Metformin had defense counsel been supplied with the reports. However, defendant fails to show what additional information defense counsel would have learned from an individual police report that he did not learn from the police report that the prosecution supplied to him that would have prompted him to request defendant's medical records. Thus, defendant fails to show that the evidence was material. For all of the reasons discussed above, the prosecution did not commit a *Brady* violation; there is no evidence that the prosecution suppressed evidence that was favorable to defendant and material to the case. See *id*. at 150-151.

## XV. PROSECUTORIAL MISCONDUCT

Defendant next argues in his Standard 4 brief that the prosecutor committed misconduct when she stated that the Metformin pills that were found in the bag of drugs were defendant's pills. We disagree.

"In order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant did not object to the prosecutor's statements. Therefore, the issue is unpreserved. See *id*.

"Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *Brown*, 294 Mich App at 382.

A prosecutor commits misconduct if she denies the defendant of a fair trial. *Brown*, 294 Mich App at 382. "Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *Id*. at 382-383. A prosecutor may not make a statement that is unsupported by the evidence. *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). "[A] prosecutor is entitled to argue the evidence and reasonable inferences from the evidence." *People v Comella*, 296 Mich App 643, 654; 823 NW2d 138 (2012).

During her closing argument, the prosecutor stated that the Metformin pills were defendant's pills and were left over from an old prescription. The prosecutor's comment during her closing argument constituted a reasonable inference from the evidence. There was evidence presented at trial that the officers found 500-milligram Metformin pills in the bag of drugs recovered from the home. In addition, Detective Schwein and the other police officers conducting a search of the house found a prescription pill bottle with defendant's name on it in the kitchen of the house. The prescription was for 850-milligram Metformin and was filled on August 19, 2013. The bottle was mostly full of medication. The Metformin pills found during the initial raid of the house looked different from those found in the prescription bottle, but Detective Schwein explained that this was consistent with the different dosage level. The fact that the 500-milligram Metformin pills were defendant's pills constituted a reasonable inference from the testimony presented at trial because the officers found Metformin pills that belonged to defendant during the search of the house and found other Metformin pills in the bag of drugs.

See *id*. The prosecutor's comments reasonably connected the testimony that defendant possessed Metformin pills with the testimony that Metformin pills were found in the bag of drugs on the floor. See *id*. Therefore, the prosecutor did not commit misconduct.

In addition, even assuming that the prosecutor did commit misconduct, the prosecutor's actions did not prejudice defendant. As stated above, the jury is presumed to have followed its instructions, and jury instructions can cure most errors. See *Mahone*, 294 Mich App at 212. The trial judge instructed the jury that the statements and arguments of the lawyers are not evidence and that the jury should only consider the lawyers' statements that are supported by the evidence or by the jurors' common sense. Therefore, the jury instructions cured any error. See *id*.

## XVI. INEFFECTIVE ASSISTANCE

Defendant next argues in his Standard 4 brief that defense counsel rendered ineffective assistance[1] when he failed to object to the prosecutor's statements connecting defendant with the Metformin found in the bag of drugs and when he failed to investigate witnesses. We disagree.

A defendant must bring a motion in the trial court for a new trial or an evidentiary hearing in order to preserve the issue of ineffective assistance of counsel for appellate review. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant did not bring a motion for a new trial or an evidentiary hearing in the trial court. Therefore, the issue is unpreserved. See *id*.

"When a defendant did not move in the trial court for a new trial or an evidentiary hearing, this Court's review is limited to mistakes apparent from the record." *Id*. Whether defense counsel was effective raises questions of fact and law. *Id*. "This Court reviews findings of fact for clear error and questions of law de novo." *Id*.

A defendant in a criminal case has the right to the effective assistance of counsel. *Id*.

> To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant. The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. [*Id*. at 80-81 (citations omitted).]

There is a strong presumption that defense counsel's conduct constituted sound trial strategy. *Id*. at 83. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

---

[1] We note that we decline to revisit this Court's earlier decision to deny defendant's motion for a remand.

First, defense counsel did not render ineffective assistance for failing to object to the prosecutor's statements during her closing argument. As discussed above, the prosecutor did not commit misconduct when she made statements during her closing argument regarding defendant's ownership of the Metformin in the bag of drugs. Therefore, defense counsel did not render ineffective assistance when he failed to object to the statements because the objection would have been futile. See *id*. Similarly, defense counsel did not render ineffective assistance for failing to object to the prosecution's failure to produce additional police reports because the objection would have been futile for the reasons discussed above. See *id*.

Second, defendant has failed to establish ineffective assistance of counsel with respect to counsel's alleged failure to investigate whether the Metformin found in the bag of drugs was defendant's medication. Defendant states in an affidavit attached to his Standard 4 brief that defense counsel did not investigate whether the Metformin pills in the bag of drugs were the same as the pills that were in defendant's prescription bottle. Defendant argues that defense counsel should have called defendant's doctor to obtain information regarding defendant's medications.[2]

However, even assuming that defense counsel did not investigate the issue, defendant fails to show that defense counsel's performance was so deficient that it fell below an objective standard of reasonableness because defendant fails to establish what actions defense counsel should have taken to investigate the difference between the two types of pills. Defendant states in his affidavit that defense counsel failed to contact defendant's doctor to obtain information regarding defendant's medications. Defense counsel could have obtained the same information from defendant himself, and defense counsel's failure to seek additional information regarding defendant's medications did not constitute deficient performance. See *Heft*, 299 Mich App at 80-81. Defendant fails to establish what additional steps defense counsel should have taken to investigate the issue. Therefore, defense counsel's performance was not deficient. See *id*.

Defendant also fails to show how he was prejudiced by defense counsel's failure to investigate whether the Metformin pills in the bag of drugs and in the prescription bottle were the same or different. There was testimony presented at trial that the Metformin pills that the officers found in the bag of drugs were a lower dosage than the Metformin pills found in the prescription bottle with defendant's name on it. Thus, the testimony at trial established that the pills were different, and defense counsel's failure to investigate the issue further did not prejudice defendant. See *id*.

Third, defense counsel did not render ineffective assistance for failing to call Nate Manning and Ehrlich as witnesses. Defendant states in his affidavit that defense counsel failed

---

[2] In addition, defendant argues that defense counsel should have objected or moved for a mistrial because the prosecutor did not supply him with forensic reports, but defendant fails to establish which forensic reports the prosecutor did not supply. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (a defendant must prove the factual predicate of his claim of ineffective assistance of counsel).

to call Ehrlich and Manning as witnesses. However, defendant fails to establish the factual predicate of his claim because there is no indication that defense counsel failed to investigate the witnesses for the defense. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). In fact, the evidence regarding whether Ehrlich and Manning would testify consisted of defendant's statements during the January 23, 2014, hearing that Ehrlich was in the hospital and Manning was in jail or prison. Thus, defendant fails to establish the factual predicate of his claim because it is not clear whether Ehrlich and Manning would have been available to testify at trial and that defense counsel failed to investigate the witnesses. See *id*.

In addition, even assuming that Ehrlich and Manning were available to testify and that defense counsel failed to investigate Ehrlich and Manning as witnesses, defense counsel's performance was not deficient because defendant fails to overcome the strong presumption that defense counsel's conduct constituted sound trial strategy. See *Heft*, 299 Mich App at 83.

Defendant argues that Ehrlich would have testified that defendant was not near the scene of the initial fight that led the officers to the house. However, whether defendant was near the scene of the fight is irrelevant to whether he possessed the drugs in the bag or in his pocket. Additionally, the police officers who testified at trial did not discuss the details of what led them to Nettleton's house, and they did not discuss defendant's involvement in the altercation. Therefore, defendant fails to overcome the presumption that defense counsel's conduct constituted trial strategy. See *id*. Defendant also fails to establish prejudice with regard to Ehrlich's testimony because defendant's involvement in the altercation that led to the search of the house is not relevant to whether defendant possessed the drugs that were found in the house. See *id*. at 80-81.

Defendant argues that Manning would have testified that he had drugs and threw cocaine on the floor of the house when he saw the police. However, defendant fails to overcome the strong presumption of sound trial strategy; for example, Manning would have been open to cross-examination regarding whether defendant possessed the bag of drugs, which contained additional types of controlled substances. See *id.* at 83. At any rate, defendant failed to establish the factual predicate for his claim, as discussed above.

XVII. CUMULATIVE ERROR

Defendant next argues in his Standard 4 brief on appeal that the cumulative effect of the errors warrant reversal. We disagree. Defendant did not raise this issue in the trial court. Therefore, it is unpreserved. This Court reviews this unpreserved issue for plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763-764.

In general, this Court reviews this type of issue to determine whether a defendant was denied a fair trial because of the combination of the alleged errors. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Id*. However, "[a]bsent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Id*.

As discussed above, the error that the trial court committed in this case occurred when the court stated that the redirect examination of defendant left the jury with the false impression that defendant was only a drug user. As explained above, the error did not seriously affect the fairness, integrity, and public reputation of the trial. The trial court did not commit any additional errors in this case. Therefore, there are no "cumulative" errors that create sufficient prejudice to warrant reversal. See *id.*

Lastly, we note that the judgment of sentence incorrectly states that defendant was convicted of possession with intent to deliver less than 50 grams of cocaine, rather than possession with intent to deliver less than 50 grams of heroin, with regard to Count 3. However, defendant was convicted of possession with intent to deliver less than 50 grams of heroin with regard to Count 3. This is an obvious typographical error, and we remand for the limited task of correcting the clerical error in the judgment of sentence.

Affirmed, but remanded for correction of the judgment of sentence consistent with this opinion. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Kurtis T. Wilder
/s/ Amy Ronayne Krause

-28-